E. S. GAYNOR LUMBER CO., Appellant v. MORRISON et al., Respondents

(60 N. W.2d 83)

(File No. 9366. Opinion filed September 15, 1953)
Rehearing denied November 23, 1953

**James T. Brick, Everett A. Bogue,** Vermillion, for Plaintiff and Appellant.

**Henry C. Mundt and Acie W. Matthews,** Sioux Falls, **Norman Jaquith,** Vermillion, for Intervenor and Respondent.

SICKEL, J.  E. S. Gaynor Lumber Company, a corporation, plaintiff, brought this action to foreclose a mechanic's lien on real property in Vermillion.  Carolyn E. Morse intervened as successor in interest to Roger Morrison and Eunice Morrison, and as owner of the property.  Richard Dixon was the contractor and made no appearance.  The claims of Charles J. Kemery and Walter T. Scott, defendants, were settled.

Mrs. Morse, the intervenor, purchased from plaintiff a set of plans for what was called the "Weyerhaeuser 4-Square Demonstration Home No. 41-E". Then she entered into a contract with Dixon for the construction of the house for a consideration of $8,000. On June 20, 1950, Charles Johnson, father of intervenor, acting in her behalf, and Dixon went to plaintiff's office in Sioux City to arrange for the purchase of the lumber and materials by Dixon. It was understood that Johnson was furnishing the money for his daughter; that Dixon would pay Gaynor for the materials as delivered, and that he would be allowed a ten per cent discount on all materials purchased. The deliveries arranged for at that time amounted to $1,308.38 and were paid for by Dixon. Additional materials were delivered to Dixon from time to time but Dixon abandoned the project before completion. On September 8, 1950, plaintiff filed a statement of its claim for a mechanic's lien on the property in the amount of $4,379.21. Plaintiff's complaint asked for the foreclosure of the lien for the full amount of the claim. The amended complaint in intervention alleges that a substantial amount of the items listed in the lien statement were nonlienable, and were falsely, knowingly and fraudulently included in the claim as filed, and that the lien was therefore void. This was denied by plaintiff. The circuit court decided that plaintiff did knowingly and intentionally file the claim for an amount clearly in excess of the amount due for materials furnished by plaintiff and used in the construction of the house, and entered judgment dismissing the action. Plaintiff appealed.

■ ■ In the case of Bohn Mfg. Co. v. Keenan, 15 S.D. 377, 89 N.W. 1009, 1010, this court held: "Where, therefore, a party files an account which he knows is not just and true, for the purpose of defrauding the owner of the property * * * the law will not aid him in enforcing his lien." In Wittrock v. Hall, 51 S.D. 39, 211 N.W. 801, it was held that a claim is not intentionally and willfully false if mistakes contained therein were honestly made.

The falsity of plaintiff's claim is not disputed. The evidence shows that the selling price of all materials delivered by the plaintiff to Dixon was $5,687.59. Deliveries paid for in cash amounted to $1,308.38, and the lien was filed for the

remainder of the account amounting to $4,379.21. After the intervenor had filed her complaint and after she had been called by plaintiff for cross-examination plaintiff filed two partial releases, one for $806.22 and the other for $323.92, amounting altogether to $1,130.14. These releases represented items contained in the sworn lien statement, but not used in the construction of the intervenor's house. The balance still claimed by plaintiff amounts to $3,249.07. The admitted overstatement of the lien claim amounted to almost 35%.

■ ■  In considering the sufficiency of the evidence on the issue of plaintiff's knowledge and intent consideration must be given to the fact that the plaintiff is a corporation charged with knowledge of all material facts of which its officers and agents acquired knowledge while acting in the course of their employment and within the scope of their authority. 19 C.J.S., Corporations, § 1078. "Thus, the corporation may be held liable for knowingly making a false statement even though the officer or agent making the statement was unaware of its falsity, where the statement is in fact false and contrary to facts imputable to the corporation through its other officers or agents." Id. § 1081.

William Leverton was plaintiff's sales manager, estimator and solicitor in charge of the retail end of plaintiff's lumber business. He knew that Dixon was interested in building the Iorio Duplex at 333 North Plumb Street in Vermillion, and was making a quotation there on the cost of remodeling on August 8, 1950. Dixon was at that time looking for some one to do some measuring for him there and Leverton met Dixon at the duplex. On that day Leverton delivered the materials described in Order Number 08059 to Dixon at that place. He knew Dixon's men were working on construction at that time. Leverton also testified that Dixon bought all of the materials used by him for construction purposes at Vermillion from plaintiff. Leverton handled all deliveries of building materials sold to Dixon except that described in Invoices Nos. 6, 15 and 19.

■  Leverton was plaintiff's agent, and he was acting in the course of his employment when he learned that Dixon was building or remodeling the duplex. He also knew the size and type of house that intervenor was building. He

knew that Dixon was buying all of his building material from plaintiff and that a considerable amount of the material so purchased was not being used in the construction of intervenor's house. Plaintiff is charged with knowledge of all the facts known to Leverton.

At the trial and at the request of counsel, Leverton computed the value of all materials required for the construction of the Morse house according to plans at the selling price during the period that deliveries were made. He found the value of the materials to be $2,451.18 plus the value of the millwork at $1,193.84, making the total cost of all materials $3,645.02. To determine the amount actually due plaintiff at the time the lien statement was filed there must be deducted from the above amount credit for $1,308.38 which Dixon paid in cash for the goods described in the first three invoices. This reduces the amount due plaintiff, according to Leverton's computation, to $2,336.64. After filing the partial releases plaintiff's claim is still excessive in the sum of $912.43.

The lien statement which was filed in this instance was verified by Francis J. Marcotte, office manager and accountant of plaintiff corporation. The verification attached to the claim was made in accordance with SDC 39.0708 which provides: "* * Such statement shall be made by or at the instance of the lien claimant, shall be verified by the oath of some person shown by such verification to have knowledge of the facts stated * * *." Marcotte testified that when he prepared the lien he was not concerned about how much lumber actually went into the Morse house; that he had no interest in the plans of any house and was not familiar with estimates. He made no attempt to identify plaintiff's materials at the Morse house and did not know what millwork was furnished for the house by plaintiff. All the materials sold to Dixon were charged to Dixon. Marcotte assumed that all materials purchased by Dixon from plaintiff went into the Morse house and then filed the lien against that property for the whole amount without any investigation whatever. By Marcotte's own admissions he did not have knowledge of the facts stated in the lien claim and his verification was therefore false. The facts disclosed by the evidence in this case were available to Marcotte at the time the lien statement was

prepared and filed and could have been discovered by him by the exercise of due diligence.

■ ■ Where the evidence shows conclusively, as it does in this case, that the lien claim was grossly exaggerated, the burden to establish good faith is upon the claimant of the lien. Sacchetti v. Recreation Co., 304 Mich. 185, 7 N. W.2d 265, 268. "* * * good faith requires the contractor not only to refrain from active fraud but to exercise reasonable diligence in keeping and stating his accounts. To hold otherwise would convert this beneficial law into an instrument of injustice." Berry v. Van Soelen, 35 N.M. 259, 295 P. 301, 302. By these standards the circuit court decided that the evidence showed an entire lack of good faith on the part of plaintiff, and it appears to this court that the decision of the circuit court is supported by the evidence.

Judgment affirmed.

ROBERTS, P. J., and RUDOLPH and LEEDOM, JJ., concur.

SMITH, J., concurs in result.