**A.G. EDWARDS & SONS, INC.,**
**Plaintiffs and Appellees,**

v.

**NORTHWEST REALTY CO., A Corporation and Enchanted World Doll Museum, A Corporation, Defendants and Appellants.**

No. 13983.

Supreme Court of South Dakota.

Argued Sept. 13, 1983.

Decided Nov. 16, 1983.

Patrick J. Kane, Sioux Falls, for plaintiffs and appellees.

Steven L. Jorgensen, Sioux Falls, for defendants and appellants.

ANDERSON, Circuit Judge.

Following a trial to the court, judgment was entered in favor of A.G. Edwards & Sons, Inc. (Edwards) against Enchanted World Doll Museum (Enchanted World). The trial court also entered judgment in favor of Northwest Realty Company. Enchanted World appeals that portion of the judgment relating to it. We affirm.

Although he is not a party, Mr. Sheldon Reese is the key figure in this litigation. He formed, is the sole shareholder of, and completely controls Northwest Realty Company. In fact, Northwest Realty Company is simply a corporate vehicle for conducting Mr. Reese's business affairs. One of Mr. Reese's interests is his extensive and valuable collection of rare dolls. Mr. Reese formed Enchanted World, a tax free foundation, to maintain and display the collection. There is ample evidence that the offi-
cers and directors of these corporations, other than Mr. Reese, served only perfunctorily, taking little or no part in corporate decisions.

In 1980 Mr. Reese decided to give Enchanted World 1,500 shares of stock in Homestake Mining Company which were held in the name of Northwest Realty Company. The shares would then be sold by Enchanted World and the proceeds used to finance the construction of a building for displaying the doll collection.

During May, 1980, Homestake Mining Company declared a stock dividend of one share for each two shares owned. The dividend stock would be issued on September 26, 1980 to the record owners of Homestake stock as of August 29, 1980. As soon as the dividend was announced, Homestake stock began trading at two different prices on the New York Stock Exchange. The higher price included the dividend shares to be issued later. The lower price, about one third less than the higher price, anticipated that the dividend shares would be retained by the seller. Both prices were regularly carried by newspapers and financial publications. During this time Mr. Reese followed the price of gold and the value of Homestake stock closely.

On September 3, 1980, Northwest Realty Company gave 1,500 shares of Homestake to Enchanted World. That same day or the next, Mr. Stewart, the President of Enchanted World, at the direction of Mr. Reese, placed an order with Mr. Boyer of A.G. Edwards & Sons, Inc. to sell the 1,500 shares when the price reached 81⅞ on the New York Stock Exchange. No one mentioned the dividend shares. On September 4, 1980, the shares were sold at the higher of the two prices which included the rights to the dividend shares when issued. The stock certificates were delivered to Edwards and Edwards paid Enchanted World in full on September 24, 1980.

On September 26, 1980, Homestake issued the dividend shares to Northwest Realty Company and at about the same time Edwards requested the 750 dividend shares

from Enchanted World for forwarding to the purchasers of the 1,500 shares. After several contacts, Mr. Reese refused to authorize the release of the 750 dividend shares. Edwards then purchased 750 shares of Homestake stock on the open market for delivery to the purchasers of the 1,500 shares and commenced this lawsuit for recovery of the cost of the 750 shares.

It is a general principle of equity that one party shall not be enriched at the expense of another party. *Thurston v. Cedric Sanders Co.,* 80 S.D. 426, 125 N.W.2d 496 (1963). The enriched party may be required to make restitution of the value of the enrichment unless the enriched party has innocently changed its position to such a degree restitution would be inequitable. Enrichment can be unjust if it is a result of money paid by mistake. 66 Am.Jur.2d Restitution and Implied Contracts, §§ 3, 8, 118 (1973).

Enchanted World has been enriched. It received a price for the 1,500 shares of stock which should have been received only if the dividend shares were also sold. We find no error in the circuit court's decision that this enrichment was unjust. In making this determination we look beyond the corporate facade and recognize that the stock gift and sale were simply the business maneuverings of Sheldon Reese. His knowledge of the prices is imputed to both of the corporations which he controls. *E.S. Gaynor Lumber Co. v. Morrison,* 75 S.D. 132, 60 N.W.2d 83 (1953). Mr. Reese knew when he ordered the stock sold that if the stock was purchased for 81⅞ the buyer would expect to receive the dividend shares when issued.

Edwards is not without fault. Mr. Boyer should have cleared up the details before the sale was completed. But, by the same token, there was nothing out of the ordinary in Enchanted World's (Reese's) order to sell the stock at 81⅞. Mr. Boyer had been Mr. Reese's stockbroker for seventeen years. He knew well of Mr. Reese's long and financially rewarding career in the market and was warranted in assuming that Mr. Reese was aware of the consequences of selling the stock for the higher of the two prices offered.

There was no innocent change of position by the enriched party. The proceeds of the sale had not even been spent when the demand for the dividend shares was made.

We find the appellants' other grounds for appeal to be without merit. The judgment of the circuit court is affirmed.

All the Justices concur.

ANDERSON, Circuit Judge, sitting for MORGAN, J., disqualified.