1996 SD 138

RANDALL STANLEY ARCHITECTS, INC., Plaintiff and Appellee,

v.

ALL SAINTS COMMUNITY CORPORATION, a South Dakota Corporation, Defendant,

and

The Chapter of Calvary Cathedral, Defendant and Appellant.

No. 19343.

Supreme Court of South Dakota.

Considered on Briefs April 24, 1996.

Decided Dec. 4, 1996.

Gary P. Thimsen and Elizabeth A. Lewis of Woods, Fuller, Shulz & Smith, Sioux Falls, for plaintiff and appellee.

John J. Simpson of Simpson Law Office, Stanley E. Whiting of Whiting Law Office, Winner, for defendant and appellant.

ROEHR, Circuit Judge.

[¶ 1] The Chapter of Calvary Cathedral (Chapter) appeals from a judgment foreclosing a mechanics' lien on real property. We reverse.

## FACTS

[¶ 2] The Episcopal Diocese of South Dakota (Diocese) is a corporation through which the ninety-five Episcopal churches in South Dakota are managed and operated. Chapter is a corporation and is a holding company for Diocese; Chapter holds title to the real and personal property of Diocese. Diocese and Chapter have a common board of directors, known as the Diocesan Council, which meets simultaneously for both Diocese and Chapter. The Bishop is president of the Council.

[¶ 3] For approximately one hundred years, Diocese operated a school in Sioux Falls. Chapter owned the real property on which the school was located. Diocese closed the school in 1986.

[¶ 4] Diocese attempted to develop the property into elderly housing, but was unsuccessful. Diocese then decided to sell the property on the open market. Members of the Calvary Parish, the local Sioux Falls parish, expressed interest in buying the property. On October 1, 1990, they formed All Saints Development Corporation (All Saints), a nonprofit corporation.

[¶ 5] Gary Stanley (Stanley) was a Sioux Falls architect. He was also a twenty-five-year member of the Calvary Parish and was familiar with the former school real property and efforts to develop it. In 1989, Stanley created Randall Stanley Architects, Inc. (Randall Stanley).

[¶ 6] On October 12, 1990, Randall Stanley and Engberg Anderson, Inc., of Milwaukee, Wisconsin, entered into a service agreement with All Saints to provide preliminary design services for the elderly housing project. Under the agreement, Randall Stanley was to be paid, and in fact was paid, for its services.

[¶ 7] In May 1991, All Saints contracted with Chapter to purchase the real property. All Saints planned to sell tax exempt bonds to finance the purchase price and the development of the property for elderly housing.

[¶ 8] In September 1992, Randall Stanley contracted with All Saints for more extensive architectural services. Randall Stanley prepared the contract, which was a Standard AIA Agreement. The contract was referred to All Saints as "Owner." Article 12 of the contract provides as follows:

(1) It shall be understood by all parties involved in the project that until the Owner's finances are in place that none of the amounts listed in 11.2.1 can be encumbered. It is further understood that should the Owner fail to secure financing that non-compensated work already completed will not become a liability to the Owner.

(2) Randall * Stanley Architects, Inc. shall be responsible, once the Owner's finances are in place, for settling any and all claims for non-compensated completed work by Engberg–Anderson.

(3) Once the Owner's finances are in place, the Owner shall so inform the Architect in writing. The Architect shall invoice and the Owner shall make payment within *one* week an amount for previously completed work but not exceeding $110,000. Payments following shall be monthly.

(4) The Architect shall visit the site daily during construction to review the progress of the work and answer any questions. The Architect's daily visits shall be limited in time and not considered full-time observation. The Architect shall attend and record the minutes for a scheduled, weekly construction meeting. Attendance at the weekly construction meeting shall include: the Architect, the Owner, the Contractor and his subcontractors, and various consultants during different phases of the work. Even though the Architect will make daily visits during the construction period, he will make himself available to visit the site at additional times to avoid slow-downs in the construction schedule.

(5) See attachment for a general review of work included and not included.

[¶ 9] Randall Stanley provided architectural services pursuant to the contract. These services benefited the property, though the parties disagree as to the extent of the benefit.

[¶ 10] All Saints was unable to sell the tax exempt bonds or obtain financing. Randall Stanley was kept advised throughout of efforts to obtain financing and of All Saints' eventual failure to do so.

[¶ 11] All Saints attempted to sell the property to a development company named Touchmark Living Centers, Inc. (Touchmark) in June of 1993. No agreement was reached.

[¶ 12] Without financing, it was clear that All Saints could not pay the purchase price to Chapter. The contract was dissolved. All Saints never did pay the purchase price or acquire title to the former school property.

[¶ 13] Chapter continued to negotiate with Touchmark for sale of the property. Randall Stanley billed All Saints for architectural services rendered. All Saints did not pay the bill and Randall Stanley filed a mechanics' lien in November of 1993. Pursuant to SDCL 44–9–26, Diocese demanded that Randall Stanley enforce the lien. Randall Stanley did so; Count One of its complaint sought a lien foreclosure and Count Two requested a money judgment based on contract. Shortly after commencement of the action, the lien was released pursuant to SDCL Chapter 44–4 to enable Chapter to sell the real property to Touchmark.

[¶ 14] After a court trial, the trial court found for Chapter on the contract action, finding that Randall Stanley had no contract with Chapter and that there was no agency relationship between Chapter and All Saints. The trial court also found that Randall Stanley's services benefited the property, that Chapter was unjustly enriched, and that the mechanics' lien attached to secure the sums due Randall Stanley on the unjust enrichment. On this basis, the trial court granted judgment for Randall Stanley on the foreclosure action.

## ISSUES

[¶ 15] Chapter raises the following issues:

1. **Was there an implied contract between Chapter and Randall Stanley under which the mechanics' lien could attach?**

2. **Is Chapter liable for improvements under SDCL 44–9–2 where it failed to give notice as permitted by SDCL 44–9–4?**

3. **Did Randall Stanley waive its claim to a mechanics' lien?**

4. **Was the mechanics' lien filed within 120 days of furnishing the last work or item of service?**

5. **Is the lien null and void for bad faith and gross exaggeration?**

## STANDARD OF REVIEW

[¶ 16] We will not disturb a trial court's findings of fact unless they are clearly erroneous. *Shedd v. Lamb*, 1996 SD 117, ¶ 17, 553 N.W.2d 241; *Jasper v. Smith*, 540 N.W.2d 399, 401 (S.D.1995). On this basis, we will not disturb the trial court's findings of fact unless, after a review of all the evidence, we are firmly and definitely convinced a mistake has been made. *Shedd*, 1996 SD 117, ¶ 17, 553 N.W.2d 241; *Cordell v. Codington County*, 526 N.W.2d 115, 116 (S.D.1994). We will review conclusions of law under a *de novo* standard, giving no deference to the trial court's conclusions of law. *Shedd*, 1996 SD 117, ¶ 17, 553 N.W.2d 241; *Cordell*, 526 N.W.2d 115, 116 (S.D.1994).

## DECISION

[¶ 17] **Issue 1: Was there an implied contract between Chapter and Randall Stanley under which the mechanics' lien could attach to the real property?**

[¶ 18] Mechanics' liens arise under SDCL Chapter 44–9. They are statutory creations. The skill, labor, or services furnished by the lien claimant must be furnished under an express or implied contract with the owner, an agent or representative of the owner, or a contractor or subcontractor. SDCL 44–9–1; *Thorson v. Maxwell Hardware Company*, 82 S.D. 385, 146 N.W.2d 739, 741 (1966); *St. John's First Lutheran v.*

*Storsteen,* 77 S.D. 33, 84 N.W.2d 725, 727 (1957).

[¶ 19] Contracts may be express or implied. SDCL 53–1–3. Randall Stanley had an express contract with All Saints. The trial court found that All Saints and Chapter had a close working relationship, but that All Saints had a life of its own and was not the alter ego of Chapter. Randall Stanley had no express contract with Chapter.

■ [¶ 20] One party may not be enriched at the expense of another. Equity creates a contract implied in law, or a quasi contract, to prevent the unjust enrichment. *Thurston v. Cedric Sanders Company,* 80 S.D. 426, 125 N.W.2d 496 (1963). In *Amert Construction Co. v. Spielman,* 331 N.W.2d 307, 310 (S.D. 1983), this Court addressed implied contracts and mechanics' liens and stated:

> When a party confers a benefit upon another party who accepts or acquiesces in that benefit and it is inequitable to receive that benefit without paying therefore, a contract will be implied between the parties.

[¶ 21] In *St. John's,* 84 N.W.2d at 728, we set forth the general rule as follows:

> Ordinarily where services or materials are furnished by one person for another, which are knowingly and voluntarily accepted, without more, it is inferred that they were given and received in the expectation of being paid for, and a promise to pay their reasonable worth implied.

[¶ 22] Randall Stanley conferred a benefit upon the real property and, consequently, upon Chapter. Chapter was enriched. The question then becomes whether the enrichment was unjust—in other words, whether it was inequitable to receive the benefits without paying for them.

[¶ 23] The facts presented here are similar to those in *St. John's.* In *St. John's,* the lien claimant and others formed a new church. Lien claimant was very active and influential in the unincorporated association. The building committee, of which the lien claimant was the chairman, acquired real property and acquired a church structure that was moved onto the real property. During construction, church trustees, including the lien claimant, conveyed the property to the church association. During construction, the lien claimant and others associated with the church contributed money and labor. The church became incorporated and the property was conveyed to the new church corporation. Lien claimant then filed a mechanic's lien against the property on the basis of an implied contract.

[¶ 24] In *St. John's,* this Court acknowledged the general rule previously stated, but held that it did not apply to the facts of that case. Church members worked together making voluntary contributions of money and labor. The items were furnished gratuitously.

> It is clear that the plaintiff church was enriched by the contribution of the items involved, but this fact alone is not sufficient to make the church liable therefor under the quasi contract concept. In addition it must also appear that it is unjust for the church to retain the benefits without payment. That feature is not here present. These benefits were voluntarily conferred. Consequently, it cannot be said there their retention is unjust.

84 N.W.2d at 728.

■ [¶ 25] In the present case, Randall Stanley's services were also furnished gratuitously. What makes this conclusion even more compelling is Randall Stanley's written contract with All Saints. Randall Stanley drafted the contract; under the contract, All Saints need not pay Randall Stanley if financing was not obtained. Without financing, All Saints would be unable to complete the purchase from Chapter, Chapter would retain legal title to the property, and Chapter would obtain the benefit of Randall Stanley's services to the property. Nevertheless, Randall Stanley chose to provide its services.

[¶ 26] Randall Stanley attempts to distinguish *St. John's.* Randall Stanley had previously provided services to All Saints, had billed for those services, and had been paid. Randall Stanley argues that this prior course of conduct shows that Randall Stanley expected to be paid and did not provide services gratuitously. However, these prior services were rendered under a written contract

that required All Saints to pay Randall Stanley. The services now in question were provided under a separate written contract—a contract that conditioned payment on financing.

[¶ 27] Under the circumstances, it is neither inequitable nor unjust that Chapter retain the benefit of Randall Stanley's services without paying. There is no implied contract.

[¶ 28] **Issue 2: Is Chapter liable for improvements under SDCL 44–9–2 where it failed to give notice as permitted by SDCL 44–9–4?**

[¶ 29] Under SDCL 44–9–2, all persons with an interest in the land are deemed to have authorized improvements made on the land by another person insofar as subjecting their interests to liens. SDCL 44–9–4 allows such an owner to avoid the lien by giving notice to those making the improvements. Chapter gave no such notice.

[¶ 30] As we recognized in *Amert Const. Co.*, the basis for this statute is similar to the basis for the implied contract theory discussed in Issue 1. All owners will benefit by the improvements. They are deemed to have authorized (implied contract) the improvements, absent notice to the contrary. [¶ 31] As we determined in our discussion of Issue 1, the equitable theory of quasi contract or unjust enrichment does not apply to these facts to create a contract implied in law. Randall Stanley asserts that this statute independently imposes Chapter's authorization of the improvement. In the present case, the vendee (All Saints) contracted with Randall Stanley for improvements; the trial court found that the vendee (All Saints) did not obtain financing and is not obligated to pay Randall Stanley under the contract. Randall Stanley now asks this Court to impose a greater liability on the vendor (Chapter) than is imposed on the vendee (All Saints). Randall Stanley cites no authority for the proposition that the authorization deemed by SDCL 44–9–2 is broader than the authorization actually contracted for by one of the owners. We decline to extend the vendor's (Chapter's) liability to this extent.

[¶ 32] **Issues 3, 4, and 5.**

[¶ 33] We do not reach these issues.

[¶ 34] We reverse.

[¶ 35] MILLER, C.J., and KONENKAMP and GILBERTSON, JJ., concur.

[¶ 36] SABERS, J., concurs in result.

[¶ 37] ROEHR, C.J., for AMUNDSON, J., disqualified.

SABERS, Justice (concurring in result).

[¶ 38] I concur in result on the basis that the mechanics' lien statement was *not* filed within 120 days of the performance of architectural services for the improvement of the property. In fact, the "tacked on" services were not performed for All Saints Development Corporation but for "Waterford," the company that ultimately purchased the land from the Chapter. In addition, the meetings had nothing to do with architectural services to improve the real estate as required for liens under SDCL 44–9–15. Therefore, the lien was not filed or perfected within 120 days of the last architectural services and therefore, ceased and was void. SDCL 44–9–15.