1998 SD 121

**Mark D. JUTTELSTAD, Petitioner and Appellant,**

v.

**Laura A. JUTTELSTAD, now known as Laura A. Wieseler, Appellee.**

**No. 20375.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 17, 1998.

Decided Dec. 16, 1998.

Tamara D. Lee, Yankton, for petitioner and appellant.

Craig A. Kennedy, Doyle and Kennedy, Yankton, for appellee.

MILLER, Chief Justice.

[¶ 1.] Mark Juttelstad appeals the trial court's decision overruling his objections to the referee's recommendation and proposed order for child support modification. We affirm in part and reverse and remand in part.

**FACTS**

[¶ 2.] Laura Juttelstad [1] and Mark Juttelstad were married on September 5, 1987. They have two children, Cody, born June 9, 1989, and Lacey, born September 17, 1991. Laura and Mark were divorced on December 27, 1995. The divorce decree required Mark to pay $510.00 per month in child support, plus $90.00 per month for health insurance coverage for Cody and Lacey.

[¶ 3.] On February 22, 1996, Mark petitioned for child support modification. At the modification hearing, the referee determined Mark's child support obligation to be $435.29 per month, making him responsible for sixty-two percent of the total support obligation. In addition, Mark was required to pay

$241.80 per month for child care expenses. This order became effective April 1, 1996.

[¶ 4.] On August 25, 1997, Mark again filed a petition for child support modification. After filing this petition, Mark received Laura's 1996 federal income tax return. Upon reviewing this return, Mark realized Laura had claimed child care expenses of $2,520.00 for the 1996 tax year. In the nine months of 1996 that Mark was required to pay child care expenses, he paid Laura $2,176.20. This meant that, although Mark was responsible for only sixty-two percent of the support obligation, in those nine months, he had actually paid more than one hundred percent of the costs. Mark was paying Laura $241.80 per month for child care expenses, when Laura's actual costs were, on average, $210.00 per month. At the modification hearing, Mark requested reimbursement or a credit for overpayment of child care expenses. The referee denied both the reimbursement request and the credit for overpayment. The referee determined Mark's child support payments should be modified to $382.46 per month, finding him to be responsible for fifty-six percent of the total support obligation. The referee also recommended that Mark pay Laura $50.00 per month for child care expenses. Both parties filed objections to the referee's report and recommendations and appealed to the circuit court.

[¶ 5.] On December 12, 1997, the circuit court heard the parties' objections. Because the referee erred in its calculation, the court modified Mark's monthly child support obligation to $391.00 per month, instead of the $382.46 previously ordered. The circuit court overruled Mark's objections to the referee's report.

[¶ 6.] Mark appeals raising two issues:

1. Whether child support payments are to be modified when the primary custodial parent qualifies for and takes the child care credit on her federal tax return.

2. Whether Mark is entitled to receive credit or reimbursement for overpayment of child care costs.

---

1. Laura Juttelstad is now known as Laura Wieseler.

**450**

## STANDARD OF REVIEW

■ [¶ 7.] This appeal involves questions of law. "We review questions of law de novo." *Hamerly v. City of Lennox*, 1998 SD 43, ¶ 10, 578 N.W.2d 566, 568 (citing *Peters v. Spearfish ETJ Planning Comm'n*, 1997 SD 105, ¶ 5, 567 N.W.2d 880, 883). Under a de novo review, no deference is given to the trial court's conclusions of law. *Sabhari v. Sapari*, 1998 SD 35, ¶ 12, 576 N.W.2d 886, 891 (citation omitted).

## DECISION

[¶ 8.] **1. Whether child support payments are to be modified when the primary custodial parent qualifies for and takes the child care credit on her federal tax return.**

■ [¶ 9.] Mark argues that, because Laura qualifies for and takes the federal child care tax credit, SDCL 25-7-6.18 requires him to be responsible for only twenty-five percent of the total child care expenses. He claims the word "it," in the last line of the statute, refers to child care expenses, not the federal child care tax credit. We disagree.

■ [¶ 10.] SDCL 25-7-6.18 provides:

The court may enter an order allocating the reasonable child care expenses for the child, which are due to employment of either parent, job search of either parent, or the training or education of either parent necessary to obtain a job or enhance earning potential. The court may consider whether the *federal child care tax credit* for such minor child is available as a benefit to the custodial parent. If the federal child care tax credit is available to the custodial parent, *it* shall be calculated at twenty-five percent of the eligible expense. (Emphasis added).

[¶ 11.] When interpreting a statute, " '[w]ords and phrases must be given their ordinary meaning.' " *Dahn v. Trownsell*, 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539 (quoting *Moss v.*

*Guttormson*, 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17). " 'This Court assumes that statutes mean what they say and that legislators have said what they meant.' " *Mid-Century Ins. Co. v. Lyon*, 1997 SD 50, ¶ 9, 562 N.W.2d 888, 891 (quoting *In re Famous Brands, Inc.*, 347 N.W.2d 882, 885 (S.D.1984)). If a term is not defined, "it should be construed according to its accepted usage and a strained, unpractical, or absurd result should be avoided." *Nelson v. South Dakota State Bd. of Dentistry*, 464 N.W.2d 621, 624 (S.D.1991) (citing *Iowa Fed. of Labor v. Iowa Dept. of Job Serv.*, 427 N.W.2d 443 (Iowa 1988)).

[¶ 12.] SDCL 25-7-6.18 does not define "it." Mark claims that because the statute does not provide a definition, the only term "it" could reference, without giving a "strained, unpractical or absurd result," would be child care expenses. This argument lacks merit. Mark's reading of the statute is clearly illogical.

■ [¶ 13.] The language of SDCL 25-7-6.18 is clear and certain. " 'When the language of the statute is clear, certain and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute.' " *Mid-Century*, 1997 SD 50, ¶ 9, 562 N.W.2d at 891 (quoting *In re Famous Brands*, 347 N.W.2d at 885). The sentence on which Mark relies addresses only the federal child care tax credit. Therefore, "it" does not need to be defined. It can reference only one thing: the federal child care tax credit. The statute clearly states that the tax credit must be calculated at twenty-five percent of the total eligible child care expense. It can mean nothing else. Any other reading of the statute would result in the "strained, unpractical, absurd result" Mark warns against.

[¶ 14.] An Arizona statute, addressing this issue, illustrates the way the calculation is performed.[2] *See* ArizRevStatAnn § 25-320

---

2. ArizRevStatAnn § 25-320 app provides in pertinent part:

The court [m]ay add to the Basic child Support Obligation amounts for any of the following:
1. *Child Care Costs:*
A parent paying for child care may be eligible for a credit from federal tax liability for depen-

dent children. Before adding child care costs to the Basic Child Support Obligation the court *may* adjust this cost in order to apportion the benefit that the dependent tax credit will have to the parent incurring the child care costs. An adjustment of twenty-five percent

app (West 1997). As an illustration, the Arizona statute uses as an example monthly child care expenses of $175.00. The monthly amount is multiplied by twelve to determine the total annual child care expense ($175 × 12 = $2,100). It is from the annual child care expense that the federal child care tax credit is taken. The annual amount (in this example $2,100) is multiplied by .0625, which establishes the monthly child care expense that may be added to the basic child support obligation ($2,100 × .0625 = $131.25).[3] Calculating the tax credit at twenty-five percent results in the amount of child care costs that may be allocated between the parties. It does not reduce the obligation of the parent not receiving the credit to twenty-five percent of the total child care costs.

**[¶ 15.] 2. Whether Mark is entitled to receive credit or reimbursement for overpayment of child care costs.**

[¶ 16.] Mark claims the trial court erred when it failed to order a credit or reimbursement for his overpayment of child care costs. We agree.

[¶ 17.] It is settled law that past-due child support payments cannot be modified, except for those that accrue during the time of a pending modification petition. SDCL 25-7-7.3; *see Houser v. Houser*, 535 N.W.2d 882 (S.D.1995). A past-due payment or installment becomes a judgment by law and cannot be retroactively modified. SDCL 25-7-7.4; *Agee v. Agee*, 1996 SD 85, ¶ 20, 551 N.W.2d 804, 806 (citations omitted). However, this prohibition on retroactive modification of past-due child support payments does not apply here. Mark has no past-due payments. He is current on all support obligations. He is not asking for a retroactive modification. He is requesting a correction for overpayment of child care expenses. Child care expenses are not a part of the basic child support obligation, but only a factor for deviation from the schedule. Therefore, SDCL 25-7-7.3 does not apply.

[¶ 18.] It is clear Mark paid Laura more per month for child care expense than Laura actually spent on child care costs. In 1996, Mark paid eighty-six percent of the total child care costs, having only made nine payments. For the nine months Mark made child care expense payments, he provided for over one-hundred percent of the monthly expense. He continued to make these monthly payments through August of 1997. Mark claims this overpayment unjustly enriched Laura. We agree.

[¶ 19.] Unjust enrichment occurs " 'when a party confers a benefit upon another party who accepts or acquiesces in that benefit and it is inequitable to receive that benefit without paying[.]' " *Sporleder v. Van Liere*, 1997 SD 110, ¶ 16, 569 N.W.2d 8, 12 (quoting *Randall Stanley Architects, Inc. v. All Saints Community Corp.*, 1996 SD 138, ¶ 20, 555 N.W.2d 802, 805 (citation omitted)). This Court has stated "[o]ne party may not be enriched at the expense of another." *Randall Stanley*, 1996 SD 138, ¶ 20, 555 N.W.2d at 805; *see also Himrich v. Carpenter*, 1997 SD 116, ¶ 21, 569 N.W.2d 568, 573 (stating the doctrine of unjust enrichment protects against one party's enrichment at another party's expense). For Mark to establish Laura was unjustly enriched at his expense, he must show: (1) Laura has received a benefit; (2) she is cognizant of the benefit; and (3) her retention of the benefit without reimbursing Mark would unjustly enrich her. *See Bollinger v. Eldredge*, 524 N.W.2d 118, 123 (S.D.1994).

[¶ 20.] First, Laura has clearly received a benefit. Since April of 1996, she has received more money from Mark than was actually needed to pay for child care costs. Mark paid Laura $241.80 every month for child care expenses. In 1996, she paid, on average, $210.00 per month. As these figures demonstrate, she has benefited by at least $31.80 every month. As of April 1, 1996, Mark was responsible for sixty-two percent of the total child support obligation. Yet, from April through December, his child

---

may be deducted from the total annual child care cost....

**3.** The same result can be reached by multiplying the annual child care expense ($2,100) by twenty-five percent ($2,100 × .25 = 525; 2100—525 = $1,575) and then dividing that amount by twelve ($1,575 ÷ 12 = $131.25).

care expense payments provided for more than one-hundred percent of the child care costs. In addition, during the 1996–1997 school year, Laura was paying only $45.00 per week for child care, while Mark continued to pay the court-ordered $241.80 every month. Mark's continued payments through August of 1997 certainly continued to provide Laura with a benefit.

[¶ 21.] Also, Laura knew of the benefit. She was the one who paid for the child care expenses. She was aware of the amount she was spending on monthly child care, and she was well aware of the amount she was receiving from Mark. When questioned by the trial court about receiving a benefit from Mark's payments, Laura, through her attorney, admitted receiving a benefit to which she was not entitled.[4]

[¶ 22.] Finally, Laura would be unjustly enriched if Mark was not reimbursed. "Enrichment is unjust if it is a result of money paid by mistake." *Talley v. Talley*, 1997 SD 88, ¶ 33, 566 N.W.2d 846, 853 (citing *A.G. Edwards & Sons, Inc. v. Northwest Realty Co.*, 340 N.W.2d 187, 189 (S.D. 1983)). "Restitution for unjust enrichment is appropriate for '[a] person who has paid another an excessive amount of money because of an erroneous belief induced by a mistake of fact that the sum was necessary for the discharge of a duty[.]'" *Id.* (quoting *Restatement of Restitution* § 20 (1936)).

[¶ 23.] Mark has paid Laura an excessive amount of money. He diligently paid the court-ordered amount, which was based on information provided by Laura. Mark believed the child care expense to be that which she claimed. It was not until August of 1997 that Mark became aware of the amount Laura actually paid for child care. Laura was benefited; she was cognizant of that fact. She still did nothing about it. Reimbursing Mark is necessary, then, to prevent Laura from being unjustly enriched at Mark's expense.

[¶ 24.] **3. Attorney Fees**

[¶ 25.] Both parties have requested appellate attorney fees. When determining if an award of attorney fees is appropriate, the court must consider the property owned by each party, the relative income of each party, the liquidity of the parties' assets, and whether either party unreasonably increased the time spent on the case. *Evans v. Evans*, 1997 SD 16, ¶ 45, 559 N.W.2d 240, 250 (citing *Beermann v. Beermann*, 526 N.W.2d 127, 131 (S.D.1995) (citation omitted)). After examining the facts of this case, and considering the factors, we hold the parties to be responsible for their own attorney fees.

[¶ 26.] Affirmed in part, reversed and remanded in part.

[¶ 27.] AMUNDSON and GILBERTSON, Justices, concur.

[¶ 28.] SABERS and KONENKAMP, Justices, concur in part and dissent in part.

KONENKAMP, Justice (concurring in part and dissenting in part).

[¶ 29.] I agree with the majority's analysis on Issue 1, but I would affirm the trial court on Issue 2, as I believe the majority retroactively applies SDCL 25–7–6.18, enacted July 1, 1997, to child care expenses paid in 1996. Under this new statute, those expenses are now allocated between the parents similar to apportionment of medical and dental insurance costs. *Cf.* SDCL 25–7–6.16. Thus, like insurance payments, overpayment by one parent might be reimbursable. Before July 1997, however, child care expenses were simply part of the computation of child support. *See* SDCL 25–7–6.10(6) (Michie 1992)(amended 1997). Under this former statute, child care expenses were denominated as a deviation factor in computing child support from the schedule in SDCL 25–7–6.2. The deviation was not a separate amount, as the majority suggests, but merely an adjustment to the amount provided in the support schedule. The former statute no more allowed payors

---

4. Specifically, when the court questioned Laura's attorney about Laura receiving "money she wasn't entitled to under any interpretation," he replied, "It would appear that way, your Honor. It could appear that way...."

reimbursement for overpayment than it allowed payees reimbursement for underpayment. Such payments were all designated as child support and, as we all acknowledge, cannot be retroactively modified. SDCL 25-7-7.3.

[¶ 30.] SABERS, Justice, joins this writing.