1999 SD 102

**Darlene VERRY, Plaintiff and Appellee,**

v.

**CITY OF BELLE FOURCHE, a municipal corporation, Defendant and Appellant.**

**No. 20714.**

Supreme Court of South Dakota.

Argued April 28, 1999.

Decided July 28, 1999.

Leroy Hill, Belle Fourche, attorney for plaintiff and appellee.

Barton R. Banks of Banks, Johnson, Colbath & Kerr, Rapid City, attorneys for defendant and appellant.

Thomas H. Frieberg of Frieberg, Rudolph & Nelson, Beresford, attorneys for Amicus South Dakota Municipal League.

MILLER, Chief Justice.

[¶ 1.] In this appeal we affirm the circuit court and hold that the statutory scheme does not permit a municipality to mandate involuntary annexation as a condition to providing city water and sewer services.

## FACTS

[¶ 2.] Although Verry lives outside the city limits of Belle Fourche, her home is within 200 feet of City's sewer and water mains. She claims that in December 1997 the South Dakota State Plumbing Commission cited her and gave her 21 days to correct certain violations. Verry asserted at oral arguments and in her brief that the City engineer was the individual who reported the alleged violations to the State. Because Verry was not connected to City's

water or sewer services, she requested that City contract with her for such services. City agreed, but conditioned its agreement upon Verry's petitioning for annexation into City. Upon her refusal to file an annexation petition, City refused to connect her to its services.

[¶ 3.] In February 1998, Verry brought suit against City seeking, among other things, connection to City's services without the condition of annexation. Having agreed that no genuine issues of material fact were in dispute, the parties consented to having the case decided on cross motions for partial summary judgment. The trial court granted Verry's motion on the count of her complaint, which alleged that City had no right to require annexation as a condition for Verry's connection to City's services.

[¶ 4.] City moved for reconsideration and, in the alternative, clarification of the trial court's decision. Following a hearing on that motion, the court vacated its prior judgment and reentered a judgment in Verry's favor.

[¶ 5.] City appeals the trial court's granting of summary judgment and raises the following issues:

1. Whether a municipality may lawfully require a nonresident to petition for annexation under SDCL 9–4–1 as a condition to providing city water and sewer services requested under SDCL 9–47–28 and SDCL 9–48–53.

2. Whether a municipality may lawfully be ordered to contract with a nonresident for water and sewer services under SDCL 9–47–28 and SDCL 9–48–53 when City prefers to

have the property annexed under SDCL 9–4–1.

## STANDARD OF REVIEW

[¶ 6.] The issue before us is strictly a matter of law, which this Court reviews de novo. *Hamerly v. City of Lennox Bd. of Adjustment*, 1998 SD 43, ¶ 10, 578 N.W.2d 566, 568 (citing *Peters v. Spearfish ETJ Planning Comm'n*, 1997 SD 105, ¶ 5, 567 N.W.2d 880, 883 (citations omitted)).

## DECISION

[¶ 7.] **1. City may not require Verry to petition for annexation under SDCL 9–4–1 as a condition to providing city water and sewer services under SDCL 9–47–28 and SDCL 9–48–53.**

[¶ 8.] SDCL 9–47–28 and SDCL 9–48–53 govern municipal water and sewer systems. SDCL 9–47–28 provides in part:

Every building in which plumbing fixtures are installed shall be connected to a public water supply system if available. A public water system is available to a premise used for human occupancy if the property line of such premise is within two hundred feet of such system. A municipality may purchase, lease with purchase option, lease or otherwise acquire from the owners thereof, any preexisting private wells located within the municipality.

SDCL 9–48–53, which refers to sewer systems, has nearly identical language.[1]

[¶ 9.] City claims that the statutes place the burden on Verry to ensure that her property is connected to a public water and sewer supply system. It further argues that SDCL 9–4–1[2] provides the

---

1. SDCL 9–48–53 provides in part:

   Every building in which plumbing fixtures are installed shall be connected to a public water sewer system if available. A public sewer system is available to a premise used for human occupancy if the property line of such premise is within two hundred feet of such system. A municipality may purchase, lease with purchase op-
   tion, lease or otherwise acquire from the owners thereof, or condemn pursuant to subdivision 9–12–1(2), any preexisting private sewers located within the municipality.

2. SDCL 9–4–1 provides in pertinent part:

   The governing body of a municipality, upon receipt of a written petition describing the boundaries of any territory contiguous to that municipality sought to be

means for her to obtain the benefit of such services, and that it may require her to petition for annexation under that statute prior to providing her with its services.[3] We find these arguments to be without merit.

[¶ 10.] When interpreting SDCL 9–47–28 and SDCL 9–48–53, their words and phrases "must be given their plain meaning and effect." *NSP v. South Dakota Dep't of Revenue*, 1998 SD 57, ¶ 8, 578 N.W.2d 579, 581 (citing *In re AT & T Information Systems*, 405 N.W.2d 24, 27 (S.D.1987)). If the language of the statutes is clear, certain, and unambiguous, "'there is no occasion for construction, and the Court's only function is to declare the meaning of the statute[s] as clearly expressed[.]'" *Juttelstad v. Juttelstad*, 1998 SD 121, ¶ 13, 587 N.W.2d 447, 450 (quoting *Mid–Century Ins. Co. v. Lyon*, 1997 SD 50, ¶ 9, 562 N.W.2d 888, 891 (citation omitted)).

[¶ 11.] In our view, the language of both statutes is clear, certain, and unambiguous. They clearly state the requirements for connection to City's services. They require buildings in which plumbing fixtures are installed to be connected to public water and sewer supplies, if the property line of the property on which such buildings are located is within 200 feet of the system. No other requirements need be met.

[¶ 12.] In addition, this Court has long recognized that "'when "shall" is the operative verb in a statute, it is given "obligatory or mandatory" meaning and effect.'" *NSP*, 1998 SD 57, ¶ 8, 578

N.W.2d at 581 (quoting *Fritz v. Howard Twp.*, 1997 SD 122, ¶ 15, 570 N.W.2d 240, 242 (citations omitted)); *see also* SDCL 2–14–2.1 (stating "[a]s used in the South Dakota Codified Laws to direct any action, the term, shall, manifests a mandatory directive and does not confer any discretion in carrying out the action so directed"). Here, the statutory language provides that the buildings "shall be connected." Thus, we conclude that such a statutory directive makes the procedure mandatory for both Verry and City; neither party retains the discretion to refuse connection to City's services.

[¶ 13.] Moreover, we find that the statutes do not require, nor even imply, that connection to City's services be conditioned on petitioning for annexation. Therefore, we are prevented from reading such a requirement into them. As this Court has previously stated, "'[t]he intent of the statute is determined from what the legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used.'" *Dahn v. Trownsell*, 1998 SD 36, ¶ 14, 576 N.W.2d 535, 539 (quoting *Moss v. Guttormson*, 1996 SD 76, ¶ 10, 551 N.W.2d 14, 17 (citations omitted)).

[¶ 14.] We find, therefore, that the clear language of the statutes requires both Verry and City to act. This action, however, cannot be conditioned upon Verry's filing of an annexation petition. Such a requirement is contrary to the statutory mandates. To read such a condition into the statutes would produce the absurd result that City cautions us to prevent. *See*

---

annexed to that municipality, may by resolution include such territory or any part thereof within such municipality if the petition is signed by not less than three-fourths of the registered voters and by the owners of not less than three-fourths of the value of the territory sought to be annexed to the municipality.

3. City claims that providing services to Verry requires additional costs, both present and future, and that Verry cannot force City to accept the costs and liabilities without also

providing them with the protection of annexation. However, this contention fails. Nothing in the record indicates that City must accept the costs associated with connecting Verry to city services. Verry admitted at oral argument that she would be responsible for the costs of connecting her line to City's line. Furthermore, City conceded that nothing requires it to charge Verry the same rate that residents pay for the services. Therefore, it is likely that City would be able to recover costs through the charged rate.

*Dahn,* 1998 SD 36, ¶ 14, 576 N.W.2d at 539. Accordingly, we find that summary judgment was properly granted.

'[¶ 15.] **2. The trial court did not err when it required City to contract with Verry for city sewer and water services.**

[¶ 16.] City claims that the trial court's order directing it to contract with Verry for sewer and water services grants her vested rights in the sewer system. It argues that our holding in *Blue Fox Bar, Inc. v. City of Yankton,* 424 N.W.2d 915 (S.D.1988) prohibits such vested rights, and that it has the discretion to contract with Verry regarding these services. We disagree and find that City's reliance on *Blue Fox Bar* in support of its position is clearly misplaced.

[¶ 17.] In *Blue Fox Bar,* we held that a municipality was prohibited from granting vested rights in its sewer services.[4] 424 N.W.2d at 919. That holding continues to be true; however, it has no application to the present case.

[¶ 18.] Requiring Verry and City to contract for water and sewer services does not grant to her vested rights in such services. It only provides her with the means necessary to comply with the requirements of SDCL 9–47–28 and SDCL 9–48–53. As such, we find no error in the trial court's order.

[¶ 19.] Affirmed.

[¶ 20.] SABERS and AMUNDSON, Justices, concur.

[¶ 21.] KONENKAMP and GILBERTSON, Justices, concur in result.

KONENKAMP, Justice (concurring in result).

[¶ 22.] Belle Fourche concedes that § 9–47–28 and § 9–48–53 compel Verry to hook up to the city's water and sewer systems. Thus, the city couches its appeal on whether it can require Verry to petition for annexation as a condition to connecting these systems. I agree that, assuming the statutes compel these connections, the city cannot force Verry to submit an annexation petition. Although Belle Fourche may be bound by its concession, whether cities are compelled to 'provide such services to nonresidents should remain open for future determination. In my view, the majority goes further than necessary in stating that these statutes require cities to hook up nonresidents to city services. To conserve water supplies, the Legislature simply required buildings with plumbing fixtures to be connected to existing city systems. It did not compel cities to provide water and sewer services to nonresidents. If we read § 9–47–28 and § 9–48–53 together with their companion statutes, we see that only city residents are entitled to such services.

[¶ 23.] First, the statutory scheme makes it obvious that only city residents must connect to city systems. For example, § 9–47–28 mandates that every building in which plumbing is installed shall be coupled to a public water supply if within 200 feet of such system. The same statute states that "[a] municipality may purchase ... or otherwise acquire from the owners thereof, any preexisting private wells *located within the municipality.*" SDCL 9–47–28 (emphasis added). Likewise, § 9–48–53 provides that "[a] municipality may purchase ... or otherwise acquire ... or condemn pursuant to subdivision 9–12–1(2), any preexisting private sewers *locat-*

---

4. In *Blue Fox Bar,* we interpreted SDCL 9–48–32, which provided at the time:

    A municipality wherein [a] sewage treatment or septic plant is maintained shall have power to contract for the privilege of connecting to said plant for the purpose of treating or disposing of private sewage or

industrial waste originating within the municipality or within one mile of the corporate limits, provided said plant has capacity over the requirements of the municipality for handling such sewage or industrial waste.

*ed within the municipality.*" (emphasis added).

[¶ 24.] Second, further examination of other statutes reveals the Legislature's intent to limit the application of these statutes to those residing within municipalities. SDCL 9–48–5 and SDCL 9–47–17 govern the acquisition of sewer and water mains "in newly annexed areas." SDCL 9–47–9 allows a city to purchase privately owned pipes and mains "within any street or alley, within the limits of the municipality."

[¶ 25.] Finally, other statutes provide for the assessment of levies and taxes on those connected to the municipal water system. For example, SDCL 9–47–19 states: "The governing body of every municipality *at the time of making its annual tax levy for other purposes* may levy a special assessment for the purpose of maintaining its system of waterworks." (emphasis added). Initially, a municipality would not and could not annually tax, "for other purposes," those residing outside its boundaries. An interpretation of our statutes that would provide for such assessment may violate our constitution. *See* SD Const. art. XI, § 10 (assessments "shall be uniform in respect to persons and property within the jurisdiction of the body levying the same"). Because the city would not have jurisdiction over either the person or the property it was trying to tax, it would be unable to require a nonresident to pay taxes on the water system. Also, as a practical matter, it would not be equitable to tax the municipal residents for upgrades and upkeep of the water system, and allow nonresidents to benefit without being burdened with payment for maintenance and improvements. Giving plain meaning to the words of the statutes, the language clearly indicates that the Legislature contemplated that these enactments would apply to residents of municipalities, not to those living outside city boundaries.

[¶ 26.] Furthermore, the legislative history reveals that the statutes only apply to systems inside city limits. SDCL 9–47–28 and § 9–48–53 were passed in 1989 pursuant to a bill entitled: "An Act to authorize a municipality to acquire private wells and sewer systems." Act of March 14, 1989, ch. 80, 1989 SD Laws 214. A bill amending chapter 9–45, which was introduced immediately preceding the aforementioned was entitled: "An Act to permit a municipality to construct streets, sewers and water improvements and assess owners of adjoining property if they benefit from the improvements." Act of March 1, 1989, ch. 79, 1989 SD Laws 214. These two enactments are from a series of bills regarding the powers and rights of municipalities. *See* 1989 SD Laws 210–15. We can see, then, that these bills were enacted to authorize municipalities to act within their boundaries. Any other interpretation would render meaningless the other provisions in the statutory scheme. *See, e.g.,* SDCL 9–47–22 (requests for rural water system service from persons residing within three miles of municipalities may be granted; if denied, however, rural water system may provide service to the individual).

[¶ 27.] When construing legislative enactments, the primary objective is to determine legislative intent. *Moss,* 1996 SD 76, ¶ 10, 551 N.W.2d at 17 (citation omitted); *see also Lewis v. Maryland,* 348 Md. 648, 705 A.2d 1128, 1130–31 (1998) (citations omitted). We give the words in a statute their plain and ordinary meaning. *Rushmore State Bank v. Kurylas, Inc.,* 424 N.W.2d 649, 657 (S.D.1988)(noting that a "long-standing principal of statutory construction [is] that the Legislature said what it meant and meant what it said"). A statute must be construed with its intent in mind, and intent is determined from examining the statute as a whole and any enactments similar in subject. *Dahn,* 1998 SD 36, ¶ 14, 576 N.W.2d at 539 (citation omitted). We presume that an "absurd result" was not contemplated by the Legislature. *Id.* (citation omitted); *see Zoss v. Dakota Truck Underwriters,* 1998 SD 23, ¶ 9, 575 N.W.2d 258, 261 (citation omitted)(when statutes appear to conflict,

a reasonable construction gives meaning to all provisions under scrutiny, making them "harmonious and workable"); *see also Lewis,* 705 A.2d at 1131 (citation omitted)("Such an interpretation must be reasonable and consonant with logic and common sense."). Also, at times, consideration of other evidence with regard to the intent of a statute is appropriate; a bill's title, function paragraphs, amendments, and its relationship to earlier and later enactments are all properly examined when ascertaining the intent. *Kaczorowski v. City of Baltimore,* 309 Md. 505, 525 A.2d 628, 632–33 (1987).

[¶ 28.] When read in conjunction with contemporaneous statutes it is apparent that the laws at issue in this case were meant to apply only to residents of municipalities.

[¶ 29.] GILBERTSON, Justice, joins this special writing.