2000 D.S.D. 9

UNITED STATES of America, on Behalf of the CHEYENNE RIVER SIOUX Tribe and Its Members, Plaintiff,

and

Cheyenne River Sioux Tribe, Plaintiff–Intervenor,

v.

The State of SOUTH DAKOTA and Gary Viken, State Secretary of Revenue; Dewey County and John Alley, County Treasurer; and Ziebach County and Virginia Hertel, County Treasurer, Defendants.

Rosebud Sioux Tribe, Plaintiff,

and

The United States of America, on behalf of the Rosebud Sioux Tribe and Its Members, Plaintiff–Intervenor,

v.

Gary Viken, in his capacity as the Secretary of Revenue of the State of South Dakota, Defendant.

No. CIV 92-3035.

United States District Court, D. South Dakota, Central Division.

March 2, 2000.

Cheryl Schrempp Dupris, U.S. Attorney's Office, Pierre, SD, Charles Jakosa, Environmental & Natural Resources Division, Indian Resources Section, U.S. Department of Justice, Washington, DC, for plaintiff.

Steven C. Emery, Eagle Butte, SD, Thomas James Van Norman, Cheyenne River Sioux Tribe Legal Department, Eagle Butte, SD, for plaintiff-intervenor.

Lawrence E. Long, Charles D. McGuigan, Attorney General's Office, Pierre, SD, Timothy T. Weber, Kansas City, MO, Steven Lyle Aberle, Dewey County States Attorney, Timber Lake, SD, Cheryl F. Laurenz Bogue, Ziebach County States Attorney, Dupree, SD, for defendant.

## AMENDED MEMORANDUM OPINION AND ORDER

KORNMANN, District Judge.

[¶ 1] Pending before the Court in this action[1] are defendants' motion for relief from judgment, Doc. 209[2], Cheyenne Riv-

---

1. The Court will refer to both the *Cheyenne River,* CIV 92–3035 and the *Rosebud,* CIV 94–3039 cases as "this action" in this opinion, unless otherwise noted, in light of the consolidation of these two cases.

2. Unless otherwise noted in this opinion, all references to document numbers refer to documents filed in CIV 92–3035.

er Sioux Tribe's motion to dismiss defendants' motion for relief from judgment, Doc. 214, the United States' motion for leave to file sur-reply brief, Doc. 218, and the United States' motion for partial summary judgment, Doc. 221. The motions have been fully briefed, and the Court will decide the motions based upon the record herein.

## BACKGROUND

[¶ 2] This action involves a challenge to the State of South Dakota's ("State") jurisdiction to impose its motor vehicle excise tax on tribal members residing on an Indian Reservation. South Dakota Codified Laws section 32–5B–1 provides that:

**Imposition of tax—Rate—Failure to pay as misdemeanor.** In addition to all other license and registration fees for the use of the highways, a person shall pay an excise tax at the rate of three percent on the purchase price of any motor vehicle, as defined by § 32–3–1, purchased or acquired for use on the streets and highways of this state and required to be registered under the laws of this state. This tax shall be in lieu of any tax levied by chapters 10–45 and 10–46 on the sales of such vehicles. Failure to pay the full amount of excise tax is a Class 1 misdemeanor.

The excise tax imposed by SDCL § 32–5B–1 was declared invalid by this Court, the Honorable John B. Jones, in CIV 92–3035 in February of 1995 (Memorandum Opinion and Order, Doc. 171, February 21, 1995).[3] In January of 1997, the United States Court of Appeals for the Eighth Circuit affirmed Judge Jones' holding that the State lacked jurisdiction to impose the excise tax on members of the Cheyenne River Sioux Tribe residing on the Cheyenne River Sioux Indian Reservation. *United States on behalf of Cheyenne River*

*Sioux Tribe v. South Dakota,* 105 F.3d 1552, 1556–58 (8th Cir.1997), *cert. denied,* 522 U.S. 981, 118 S.Ct. 441, 139 L.Ed.2d 378 (1997) (*"Cheyenne River"*). The Eighth Circuit held that a tribal member's on-reservation activities are immune from state taxation in the absence of congressional authorization and Congress has not specifically authorized the taxation of a tribal member's personal property. *Id.* Judge Jones denied the request for monetary damages in Cheyenne River to compensate for past payments of the excise tax by tribal members in CIV 92–3035, finding that previous cases addressing state taxation of motor vehicles were not applied retroactively (Doc. 171 at 10–11). The Eighth Circuit reversed Judge Jones' denial of the request for monetary damages, holding that damages were not necessarily barred. *Cheyenne River,* 105 F.3d at 1561. In reaching this conclusion, the Eighth Circuit recognized that a refund of state taxes paid under duress is due if the state tax is declared to be invalid either " 'because ... it [is] beyond the State's power to impose' or 'because the taxpayers were absolutely immune from the tax.' " *Id.* at 1560. The case was remanded to the district court with the direction that the district court "determine whether damages should be awarded and, if so, in what amount." *Id.* at 1561. Following remand, Judge Jones transferred the *Cheyenne River* case, CIV 92–3035, to this Court for disposition. Judge Jones also transferred to this Court the related case, *Rosebud Sioux Tribe v. Johnson,* CIV 94–3039 (D.S.D.), challenging the same excise tax imposed against members of the Rosebud Sioux Tribe residing on the Rosebud Sioux Reservation. The *Cheyenne River* and *Rosebud* cases were consolidated on appeal to the Eighth Circuit. *See Cheyenne River,* 105 F.3d at 1552.

---

**3.** The Cheyenne River Sioux Tribe also challenged the imposition of the state annual motor vehicle registration fee on Indians residing on the reservation pursuant to SDCL § 32–5–5. Judge Jones concluded the registration fee was a nondiscriminatory fee that was lawfully collected from tribal members

residing on the reservation who chose to purchase state license plates. The Eighth Circuit affirmed Judge Jones' ruling regarding the registration fee. *Cheyenne,* 105 F.3d at 1559. Imposition of the state annual motor vehicle registration fee is not at issue in the motions pending before the Court.

This Court consolidated the two cases after the cases were remanded to the district court and after Judge Jones transferred them to this Court.

[¶ 3] In the *Rosebud* case, the Rosebud Sioux Tribe sought declaratory and injunctive relief against the imposition of the excise tax[4] on Indians residing on the Rosebud Sioux Indian Reservation. Judge Jones did not specifically enjoin the State from collecting the excise tax from tribal members living on the reservation in the *Rosebud* case. The Eighth Circuit affirmed the denial of injunctive relief stating that:

> In its opinion in [the Cheyenne River Sioux Tribe] case, the district court denied injunctive relief since there was "no reason to believe the defendants will not comply with the requirements of this decision." Implicit in [the district court's] Rosebud ruling is a similar assumption that the state was complying with the requirements of the Cheyenne River decision and had stopped collecting excise taxes from tribal members living on reservations. Injunctive relief is unnecessary where there is no showing of irreparable harm, and nothing in the record suggests that South Dakota continues to collect the excise taxes from tribal members residing on Indian reservations.

*Cheyenne River*, 105 F.3d at 1562. Contrary to Judge Jones' and the Eighth Circuit's very reasonable assumptions, South Dakota continued to collect excise taxes from tribal members residing on every reservation in South Dakota except the Cheyenne River Sioux Indian Reservation following Judge Jones' February 1995 ruling in CIV 92–3035 and his May 1995 ruling in CIV 94–3039. Despite Judge Jones' May 23, 1995, ruling in the Rosebud case that it was unlawful to collect the excise tax from members of the Rosebud Sioux Tribe residing on the Rosebud Sioux Reservation, the State continued to collect excise taxes under SDCL 32–5B–1 from members of the Rosebud Sioux Tribe residing within the "closed" portion of such reservation from May 23, 1995, until March 12, 1997. Following the February 21, 1995, issuance of Judge Jones' decision in *Cheyenne River*, CIV 92–3035, the State took the rather outrageous position in letters to county treasurers that *Cheyenne* "is not good law" (a position from which the State later retreated after this Court questioned such tactics) and informed the county treasurers to continue collecting excise taxes from tribal members living on reservations, other than the Cheyenne River Reservation.

[¶ 4] Following the Eighth Circuit's remand of both cases, the United States filed a motion to intervene in the *Rosebud* case on August 10, 1998. Judge Jones granted the motion to intervene on October 1, 1998 (CIV 94–3039, Docs. 43 and 45).

[¶ 5] Although the issue of whether the defendants have jurisdiction to impose the excise tax on tribal members residing in "Indian country" rather than solely on "reservations" was not directly raised in the present action, the issue regarding Indian country was directly raised and ruled upon by the Court in the actions pending in the Northern Division, i.e. CIV 97–1015 and CIV 98–1037. On March 1, 1999, the Court enjoined the defendants in CIV 98–1037 from collecting the excise tax imposed pursuant to SDCL § 32–5B–1, et seq., from tribal members residing in Indian country as defined in 18 U.S.C. § 1151, holding that the collection of the excise tax from those tribal members under the State's "protest system" violated treaty protected rights (CIV 98–1037, Doc. 60).

[¶ 6] The State imposes the excise tax pursuant to SDCL § 32–5B–1. Failure to pay the excise tax is a Class 1 misdemeanor. Under South Dakota law, a Class 1 misdemeanor is punishable by a maximum of one year imprisonment in a county jail, or a fine of $1,000, or both such imprison-

---

4. The Rosebud Sioux Tribe also challenged the imposition of the state annual motor vehicle registration fee under SDCL § 32–5–5. As noted above, the registration fee is not at issue in the motions pending before the Court.

ment and fine. SDCL § 22–6–2(1). Except as provided by statutes not relevant to this case, the title for a motor vehicle may not be issued or transferred unless the excise tax is paid. SDCL § 32–5B–14.

[¶ 7] In its motion for partial summary judgment the United States requests that the Court issue an order ruling that the defendants are obligated to reimburse individual members of the Cheyenne River Sioux Tribe and Rosebud Sioux Tribe who previously paid the excise tax while they resided in Indian country. The United States asserts that such an order would assist the parties in conducting tailored discovery and expedite resolution of any remaining factual issues to reach a final disposition of these cases.

[¶ 8] Although the defendants now admit liability to refund certain excise taxes at issue in this lawsuit, they assert that liability for refunds is limited by the following: (1) the three-year statute of limitations in SDCL § 10–59–19 applies to all claims for refunds; (2) the statute of limitations in the *Rosebud* case is measured from the date the United States intervened rather than from the date the complaint was filed by the Rosebud Sioux Tribe in that case; (3) only tribal members residing in Indian country governed by their respective tribes when they paid the excise tax are entitled to refunds; and (4) if a tribe required its members to pay the excise tax, the members of such tribe are not entitled to a refund of the excise tax paid during the time the tribe required such payment. Material facts are in dispute and summary judgment is not appropriate, according to the defendants, because each individual refund claim will require a factual determination. As to each tribal member's refund claim, defendants contend the United States must produce the following information: (1) name of the tribal member; (2) proof that the claimant was an enrolled member of the tribe on the date of the transaction in question; (3) date of payment of the excise tax; (4) amount of excise tax paid; (5) description of the motor vehicle sufficient to identify it; (6) residence of tribal member on the date the excise tax was paid; and (7) status of tribal member's residence in Indian country under 18 U.S.C. § 1151 on the date the excise tax was paid. In addition, defendants assert the Eleventh Amendment bars all relief requested by the Rosebud Sioux Tribe. However, defendants acknowledge that the claims asserted by the United States on behalf of Indian tribes or their members are not barred by the Eleventh Amendment.

[¶ 9] The defendants filed a motion, pursuant to Fed.R.Civ.P. 60(b)(5) and (6), seeking relief from the February 1995 judgment entered in CIV 92–3035 wherein Judge Jones ruled that the defendants could not collect excise taxes from members of the Cheyenne River Sioux Tribe residing on the Cheyenne River Sioux Indian Reservation. The basis of the defendants' motion is a new development, namely the adoption of administrative rules in September of 1998 by the South Dakota Department of Revenue ("Department"). The defendants claim the administrative rules were "crafted" to impose the excise tax "upon tribal members residing in Indian country *only* that amount of [excise] tax which represents 'actual off-reservation use' of the tribal member-owned motor vehicle." (defendants' brief, Doc. 210 at 7.) Defendants assert that the administrative rules provide a partial exemption from the excise tax to tribal members residing in Indian country and that the excise tax, as modified by the administrative rules, is lawful under the Supreme Court's decisions in *Oklahoma Tax Comm'n v. Sac and Fox Nation,* 508 U.S. 114, 113 S.Ct. 1985, 124 L.Ed.2d 30 (1993) ("*Sac and Fox*"), *Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) ("*Colville*"), and *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). In their reply brief, the defendants argue that a property tax such as the excise tax at issue in this case may lawfully be pro-rated between exempt and non-exempt uses pursuant to South

Dakota law and the statements by the Supreme Court in the above three cases regarding a "tailored" tax. Defendants contend such a proration of the excise tax does not violate the Equal Protection Clause.

[¶ 10] The United States opposes the defendants' motion for relief from judgment, contending the State is attempting to circumvent the rulings by Judge Jones and the Eighth Circuit in the *Cheyenne River* case by transforming the excise tax into a highway use tax only as to Indians while, as to everyone else, it remains a property tax. The United States further contends that the administrative rules did not change the character of the tax; rather, it remains an ownership tax on personal property owned by tribal members residing in Indian country. The Cheyenne River Sioux Tribe argues that the Department lacks authority to apportion a tax pursuant to a statute that has been held to be in violation of federal law as applied to tribal members residing on the reservation. The Tribe also argues the defendants' motion should be dismissed on the grounds of res judicata, collateral estoppel and the law of the case doctrine. Both the Tribe and the United States contend that Fed. R.Civ.P. 60(b) does not authorize the relief sought by the defendants. As to the proration argument raised by defendants in the reply brief, the United States counters that state statutory authority, rather than administrative regulatory authority, is required to prorate taxes and no such state statutory authority exists. The United States further asserts that the exemption from the excise tax is based upon federal law and, therefore, the State would need congressional approval to impose any portion of the excise tax on tribal members residing in Indian country.

## DECISION

*A. United States' Motion for Partial Summary Judgment*

[¶ 11] Summary judgment is appropriate if the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, this Court views the evidence in a light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir.1992) (quoting Fed.R.Civ.P. 56(e)). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Arnold v. Columbia*, 197 F.3d 1217, 1220 (8th Cir.1999).

[¶ 12] In its motion for partial summary judgment, the United States requests that the Court order the defendants to refund excise taxes paid by tribal members while they resided in Indian country. The Eighth Circuit remanded the issue of damages to the district court in *Cheyenne River*, 105 F.3d at 1561. As stated by the Eighth Circuit, "[w]hen a state tax is declared to be invalid either 'because ... it [is] beyond the State's power to impose' or 'because the taxpayers were absolutely immune from the tax,' the State must '"undo" the unlawful deprivation by refunding the tax previously paid under duress.'" *Id.* at 1560 (quoting *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18, 39, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990)). The Supreme Court recognized that if a taxpayer is absolutely immune from a tax, the Fourteenth Amendment would be violated if the State were allowed to retain the taxes previously paid under duress without any obligation to refund such unlawfully collected taxes. *McKesson*, 496 U.S. at 39, 110 S.Ct. 2238 (citations omitted). A dam-

age award is not barred by the Eleventh Amendment in this case because "[t]he Eleventh Amendment does not bar suits brought by the United States on behalf of Indian tribes or their members." *Cheyenne River*, 105 F.3d at 1560 (citing *United States v. Minnesota*, 270 U.S. 181, 195, 46 S.Ct. 298, 70 L.Ed. 539 (1926)). On the issue of refunds, the Eighth Circuit acknowledged that "[t]axes that are voluntarily paid because of a mistake of law cannot be recovered back, but taxes paid under duress or coercion are recoverable, and state refund procedures do not limit such recovery." *Id.* at 1561 (citations omitted).

[¶ 13] Excise taxes at issue in this case were clearly paid "under duress or coercion" because the State did not provide a pre-deprivation procedure to challenge the tax and failure to pay the tax subjected tribal members to criminal penalties pursuant to SDCL §§ 32–5B–1 and 22–6–2(1). Therefore, the State must refund the excise taxes previously paid under duress by tribal members residing in Indian country, as further explained below.

[¶ 14] The Supreme Court has explained that its cases "make clear that a tribal member need not live on a formal reservation to be outside the State's taxing jurisdiction; it is enough that the member live in 'Indian country.' Congress has defined Indian country broadly to include formal and informal reservations, dependent Indian communities, and Indian allotments, whether restricted or held in trust by the United States. *See* 18 U.S.C. § 1151." *Sac and Fox*, 508 U.S. at 123, 113 S.Ct. 1985. Therefore, the State has and had no more jurisdiction to impose the excise tax on tribal members residing in Indian country than it does or did to impose the excise tax on tribal members residing on Indian reservations.

▇ [¶ 15] The defendants contend that the Eighth Circuit's decision in *Cheyenne River*, 105 F.3d at 1559–60, means that Indians who are not members of the Tribe on whose reservation they reside must pay the excise tax. The defendants believe the

United States is, in effect, asking the Court to expand the Eighth Circuit's holding in *Cheyenne River* to give a blanket exemption to all Indians who are members of *any* tribe who reside in any Indian country in South Dakota. The United States responds that the exemption applies regardless of whether a tribal member's tribe governs the Indian country where the tribal member resides. This is a federal right, argues the United States, which is based upon the federal government's preemption of state taxing jurisdiction and the right exists regardless of which tribe governs the Indian land on which a tribal member resides. The Court agrees with the defendants on this issue. The Supreme Court held in *Colville* that the State of Washington could lawfully apply its sales and cigarette taxes on Indians resident on the reservation but not enrolled in the governing Tribe. 447 U.S. at 160–61, 100 S.Ct. 2069. In reaching this decision, the Supreme Court explained:

> Federal statutes, even given the broadest reading to which they are reasonably susceptible, cannot be said to pre-empt Washington's power to impose its taxes on Indians not members of the Tribe ... [T]he mere fact that nonmembers resident on the reservation come within the definition of "Indian" for purposes of the Indian Reorganization Act of 1934, 48 Stat. 988, 25 U.S.C. § 479, does not demonstrate a congressional intent to exempt such Indians from state taxation.

> Nor would the imposition of Washington's tax on these purchasers contravene the principle of tribal self-government, for the simple reason that nonmembers are not constituents of the governing Tribe. For most practical purposes, those Indians stand on the same footing as non-Indians resident on the reservation. There is no evidence that nonmembers have a say in tribal affairs or significantly share in tribal disbursements. We find, therefore, that the State's interest in taxing these purchasers outweighs any tribal interest that

may exist in preventing the State from imposing its taxes.

*Colville*, 447 U.S. at 160–61, 100 S.Ct. 2069. Although the issue of the State's power to tax nonmember Indians was not directly raised in *Cheyenne River*, the Eighth Circuit concluded that even if this issue had been properly presented the arguments made were not convincing. 105 F.3d at 1559. "[T]he tax immunity of reservation Indians is premised on the preemption of state laws by treaty and statute and informed by notions of tribal self government. These reasons underlying immunity do not have the same force as applied to Indians who are not members of the governing tribe." *Id.* (citing *Colville*, 447 U.S. at 160–61, 100 S.Ct. 2069). The Court concludes, based upon the discussion in *Colville* and the Eighth Circuit's decision in *Cheyenne River*, that only tribal members residing in Indian country governed by the tribe of which they are members are exempt from the excise tax. Therefore, the Court will deny the United States' motion for partial summary judgment to the extent it seeks an order stating that the defendants must refund excise taxes paid by a tribal member residing in Indian country which is not governed by that member's tribe. For example, a member of the Cheyenne River Sioux Tribe is not entitled to a refund of any excise taxes paid while such individual resided in Indian country governed by the Rosebud Sioux Tribe. However, a member of the Cheyenne River Sioux Tribe is entitled to a refund of excise taxes paid (subject to the statute of limitations discussed below) while such individual resided in Indian country governed by the Cheyenne River Sioux Tribe.

[¶ 16] The defendants contend the three-year statute of limitations in SDCL § 10–59–19 should govern any claim for refund of the excise tax paid by tribal members. The United States asserts the federal statute of limitations in 28 U.S.C. § 2415(a) governs the claims for refunds in this action. The federal statute of limitations provides in relevant part that:

[E]very action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues.... *Provided further,* That an action for money damages brought by the United States for or on behalf of a recognized tribe, band or group of American Indians shall not be barred unless the complaint is filed more than six years and ninety days after the right of action accrued.

28 U.S.C. § 2415(a).

[¶ 17] The Supreme Court recognized in *Oneida County v. Oneida Indian Nation,* 470 U.S. 226, 241–42, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985), that "[o]riginally enacted in 1966, [28 U.S.C. § 2415] provided a special limitations period of 6 years and 90 days for contract and tort suits for damages brought by the United States on behalf of Indians." In considering whether a state statute of limitations applied to a claim by the government for taxes illegally collected from Indians, the Supreme Court held that:

Nothing that the state can do will be allowed to destroy the federal right which is to be vindicated; but in defining the extent of that right its relation to the operation of state laws is relevant. The state will not be allowed to invade the immunities of Indians, no matter how skilful [sic] its legal manipulations. Nor are the federal courts restricted to the remedies available in state courts in enforcing such federal rights. Nor may the right to recover taxes illegally collected from Indians be unduly circumscribed by state law. Again, *state notions of laches and state statutes of limitations have no applicability to suits by the Government, whether on behalf of Indians or otherwise.* This is so because the immunity of the sovereign from these defenses is historic. Unless expressly waived, it is implied in all federal enactments.

*Board of Comm'rs of Jackson County v. United States,* 308 U.S. 343, 350–51, 60 S.Ct. 285, 84 L.Ed. 313 (1939) (citations omitted and emphasis added). Given the express statute of limitations in 28 U.S.C. § 2415(a) and the Supreme Court's statement in *Jackson County,* namely that state statutes of limitations have no applicability to suits by the United States brought on behalf of Indians, the Court concludes that the six-year and ninety-day limitations period in 28 U.S.C. § 2415(a) applies to the claims in this case. *See Oneida County,* 470 U.S. at 240–42, 105 S.Ct. 1245 (recognizing that a state statute of limitations may apply to a federal claim which is analogous to a state cause of action if no express federal statute of limitations governs the federal claim and the state statute of limitations would not be inconsistent with underlying federal policies); *United States v. Michigan,* 851 F.2d 803, 810 (6th Cir.1988) (holding that the statute of limitations provided by 28 U.S.C. § 2415, rather than the state statute of limitations, governed an action brought by the United States on behalf of federal credit unions seeking to recover as damages sales taxes improperly paid by the federal credit unions).

[¶ 18] As an express contract does not exist regarding the payment of the excise tax, this action is governed by 28 U.S.C. § 2415(a) only if it involves an implied contract. In discussing the law of North Dakota, the Eighth Circuit explained that " '[u]njust enrichment is a broad equitable doctrine *which rests upon quasi or constructive contracts implied by law* to prevent a person from unjustly enriching [himself] at the expense of another.' " *JN Exploration & Production v. Western Gas Resources, Inc.,* 153 F.3d 906, 909–10 (8th Cir.1998) (quoting *In re Estate of Hill,* 492 N.W.2d 288, 295 (N.D.1992)); *see also Michigan,* 851 F.2d at 810 (holding that "an action for unjust enrichment is based on a quasi-contract, which is synonymous with a 'contract implied in law.' "). South Dakota law similarly provides that in the absence of an express contract "[o]ne party may not be enriched at the expense of another. Equity creates a contract implied in law, or a quasi contract, to prevent the unjust enrichment." *Randall Stanley Architects, Inc. v. All Saints Community Corp.,* 555 N.W.2d 802, 805 (S.D.1996). In *Michigan,* the Sixth Circuit concluded the state sales taxes paid by federal credit unions were unconstitutional actions and resulted in the unjust enrichment of the State of Michigan. *Id.* Likewise, the State of South Dakota has been unjustly enriched by the payment of the excise tax from tribal members who were immune from state taxation. The Eleventh Circuit recognized that a quasi-contractual claim is governed by the six-year statute of limitations in 28 U.S.C. § 2415(a). *United States v. Moore,* 968 F.2d 1099, 1101 (11th Cir.1992). In discussing unjust enrichment and quasi-contract claims, the Seventh Circuit noted that when Congress enacted § 2415, unjust enrichment claims were clearly understood to be within the realm of "contract" claims and, thus, subject to the six-year statute of limitations in § 2415(a), rather than the "tort" claims subject to the three-year statute of limitations in § 2415(b). *Federal Deposit Ins. Corp. v. Bank One, Waukesha,* 881 F.2d 390, 392–93 (7th Cir.1989). At least two federal district courts have likewise held that unjust enrichment claims are treated as quasi-contractual claims and are governed by the six-year statute of limitations in § 2415(a). *United States v. Stella Perez,* 956 F.Supp. 1046, 1050–51 (D.Puerto Rico 1997); *United States Small Bus. Admin. v. Wasson,* 865 F.Supp. 753, 754 (W.D.Okla.1994). The Court concludes, based upon the above authority, that this action involves a contract implied in law to which the statute of limitations in 28 U.S.C. § 2415(a) applies. The Court further concludes that this action is governed by the portion of section 2415 specifically relating to claims brought by the United States on behalf of Indians, which provides a six-year and ninety-day limitations period, rather than the general six-year limitations period.

■ [¶ 19] Having ruled that the six-year and ninety-day statute of limitations provided in 28 U.S.C. § 2415(a) governs this action, the next question is from what date should the limitations period "look back" commence. The United States contends the beginning date for the limitations period as to members of the Cheyenne River Sioux Tribe should be fiscal year 1986, which is six years prior to the filing of the complaint in CIV 92–3035. The United States asserts members of the Rosebud Sioux Tribe are entitled to refunds for a six year period prior to Judge Jones' February 21, 1995, order in *Cheyenne River*, CIV 92–3035, granting the United States' and Cheyenne River Sioux Tribe's motions for summary judgment declaring that the excise tax may not be collected from members of the Cheyenne River Sioux Tribe residing on the Cheyenne River Sioux Indian Reservation.

[¶ 20] The defendants contend, however, that because the Cheyenne River Sioux Tribe required its members to display valid state license plates and pay the excise tax prior to March 7, 1994 (the date tribal law was changed to delete such requirements), qualifying members of the Cheyenne River Sioux Tribe are entitled to refunds of excise taxes paid only after March 7, 1994. Valid state license plates can be obtained only by registering a motor vehicle with the State and paying the excise tax. *See* §§ 32–5–78, 32–5–81, 32–5B–1. Although the Cheyenne River Sioux Tribe indirectly required its members to pay the excise tax, the defendants' argument on this issue is unpersuasive because congressional authorization is required for the State to impose its excise tax on tribal members residing in Indian country and Congress has not given any such authorization. *Cheyenne River*, 105 F.3d at 1558 (holding that "without congressional authorization" the State may not impose its motor vehicle excise tax). The defendants further assert that qualifying members of the Rosebud Sioux Tribe are entitled to refunds of excise taxes paid three years prior to the United States filing its motion to intervene in CIV 94–

3039, rather than from the date the complaint was filed by the Tribe in 1994.

[¶ 21] The Court concludes that, under 28 U.S.C. § 2415, the six-year and ninety-day statute of limitations "look back" is measured from the date on which the complaint is filed by the United States. 28 U.S.C. § 2415(a) (stating that ". . . every action for money damages brought by the United States for or on behalf of a recognized tribe, band or group of American Indians shall not be barred unless the complaint is filed more than six years and ninety days after the right of action accrued."). Therefore, in CIV 92–3035, involving the Cheyenne River Sioux Tribe, the defendants should refund excise taxes paid, from June 4, 1986, to the date this order is filed, by members of the Cheyenne River Sioux Tribe who resided in Indian country, as defined in 18 U.S.C. § 1151, which was governed by the Cheyenne River Sioux Tribe at the time the excise tax was paid. In CIV 94–3039, although the action was filed by the Rosebud Sioux Tribe on October 3, 1994, the United States did not seek to intervene until August 10, 1998. The Court concludes that, based upon the language in 28 U.S.C. § 2415(a) regarding actions "brought by the United States," the appropriate date from which the statute of limitations should be measured in CIV 94–3039 is the date on which the United States sought to intervene on behalf of the Rosebud Sioux Tribe and its members residing in Indian country, which occurred on August 10, 1998. In CIV 94–3039, the defendants should, therefore, refund excise taxes paid from May 12, 1992, to the date this order is filed, by members of the Rosebud Sioux Tribe who resided in Indian country, as defined in 18 U.S.C. § 1151, which was governed by the Rosebud Sioux Tribe at the time the excise tax was paid.

■ [¶ 22] In communications with the Court in connection with the Northern Division cases mentioned above, the State agreed that tax refunds are paid with interest at the annual rate of 15 per cent

pursuant to SDCL §§ 10–59–24 and 10–59–6 (*See* CIV 97–1015, Doc. 77, letter to Court from defendants dated February 9, 1999). The State informed the Court that it has already provided refunds with interest at the annual rate of 15 per cent to tribal members who paid the excise tax on or after January 17, 1997, while residing on closed reservations. (CIV 97–1015, Doc. 77.) The Court finds the imposition of interest on the refunds at issue in this case is appropriate and not in conflict with the Supreme Court's refusal in *Jackson County* to award interest to the taxpayer entitled to a refund in that case. In *Jackson County,* the Supreme Court found the county innocently collected taxes which it did not know were not properly the property of the county. 308 U.S. at 353, 60 S.Ct. 285. In this case, the State collected excise taxes from tribal members residing on reservations even after Judge Jones explicitly held in *Cheyenne River* that such taxes were unlawful. Moreover, the law of Kansas evaluated in *Jackson County* expressly provided that a taxpayer could not recover from a county interest upon taxes wrongfully collected. 308 U.S. at 349, 60 S.Ct. 285. In contrast, South Dakota law expressly provides that interest may be recovered from the State if the overpayment of tax is not due to the taxpayer's error. SDCL § 10–59–24.

■ [¶ 23] The defendants contend summary judgment should not be granted because each individual refund claim will require a factual determination. The United States responds that the issues related to each individual refund claim were not raised by it in the pending motions and that such issues are more appropriately handled during discovery. The United States' belief is that once the Court rules upon any limitations of the State's liability regarding refunds, the parties should be able to work together to ensure that the proper individual tribal members receive reimbursement. The Court agrees the United States is not seeking summary judgment as to each individual refund claim and that such issues should be handled by the parties during discovery. The

United States seeks a ruling from the Court regarding the State's liability for refunds, from which the parties can determine which individual tribal members are entitled to refunds. The Court assumes that defendants have, in good faith, maintained and still retain all records necessary to determine the refunds. To be sure, the defendants have for many years had notice of these requested refunds.

■ [¶ 24] The defendants argue that the Rosebud Sioux Tribe is barred by the Eleventh Amendment from asserting any refund claim on behalf of its members or as a surrogate for the United States. Citing *Arizona v. California,* 460 U.S. 605, 614–15, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983), the United States contends that, because the Rosebud Sioux Tribe's claims are the same as the claims asserted by the United States, the Eleventh Amendment does not bar the Tribe's claims.

[¶ 25] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Indian tribes are accorded the same status as a foreign sovereign. *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 781–82, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991). The Supreme Court held, and the defendants do not dispute, that Eleventh Amendment immunity does not bar suits by the United States on behalf of Indian tribes or their members. *Id.* at 782–83, 111 S.Ct. 2578 (citing *United States v. Minnesota,* 270 U.S. 181, 195, 46 S.Ct. 298, 70 L.Ed. 539 (1926)). The Supreme Court found in *Arizona* that "the States' sovereign immunity protected by the Eleventh Amendment is not compromised" by allowing Indian tribes to participate in an adjudication of their water rights which was commenced by the United States where the tribes did not seek to bring new claims or issues against the States not raised by the United States. 460 U.S. at 614, 103

S.Ct. 1382. The Eighth Circuit has applied the ruling in *Arizona* in a case where the initial action was brought by the tribe and the United States later intervened in the action. *Mille Lacs Band of Chippewa Indians v. Minnesota*, 124 F.3d 904, 913 (8th Cir.1997), *aff'd*, 526 U.S. 172, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999). Therefore, because the Rosebud Sioux Tribe and the United States seek the same relief in CIV 97–1015, South Dakota's sovereign immunity is not compromised and the Eleventh Amendment does not bar this action by the Tribe. *Arizona*, 460 U.S. at 614, 103 S.Ct. 1382; *Mille Lacs*, 124 F.3d at 913. In light of the conclusion that this case is not barred by the Eleventh Amendment, the Court need not reach the defendants' argument regarding the exception to Eleventh Amendment immunity provided in *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

[¶ 26] In conclusion, the Court will grant the United States' motion for partial summary judgment to the extent that the State is obligated to refund, with interest, the excise tax paid by individual members of the Cheyenne River Sioux Tribe, on whose behalf the United States is acting in CIV 92–3035, who paid the tax, from June 4, 1986, to the date this order is filed, while they resided in Indian country governed by the Cheyenne River Sioux Tribe. The Court will also grant the United States' motion for partial summary judgment to the extent that the State is obligated to refund, with interest, the excise tax paid by individual members of the Rosebud Sioux Tribe, on whose behalf the United States is acting in CIV 94–3039, who paid the excise tax, from May 12, 1992, to the date this order is filed, while they resided in Indian country governed by the Rosebud Sioux Tribe.

*B. Motion for Relief From Judgment*

[¶ 27] The defendants filed a motion seeking relief from Judge Jones' February 21, 1995, decision holding that the State could not lawfully collect the excise tax from members of the Cheyenne River Sioux Tribe residing on the Cheyenne River Sioux Reservation (Doc. 209). Fed. R.Civ.P. 60(b) provides, in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ...

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

[¶ 28] "Rule 60(b) is to be given a liberal construction so as to do substantial justice and to prevent the judgment from becoming a vehicle of injustice." *MIF Realty L.P. v. Rochester Assoc.*, 92 F.3d 752, 755 (8th Cir.1996) (quotation marks and citations omitted). Rule 60(b) is "grounded in equity and exists 'to preserve the delicate balance between the sanctity of final judgments ... and the incessant command of a court's conscience that justice be done in light of all the facts.'" *Id.* (quoting *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 515 (8th Cir.), *cert. denied*, 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984)). In *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), the Supreme Court held that it is appropriate to grant a Rule 60(b)(5) motion when the party seeking relief from a consent decree can show "a significant change either in factual conditions or in law." The Supreme Court recognized that its holding in *Rufo* applies to injunctions and held that "[a] court may recognize subsequent changes in either statutory or decisional law." *Agostini v. Felton*, 521 U.S. 203, 215, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997). The defendants assert the law has changed because the rules adopted by the Department now make the excise tax "tailored" to off-Indian country use of tribal members' motor vehicles. *See* S.D.Admin.R. Chapter 64:48:01.

One of the administrative rules provides in part:

Any individual who is an enrolled member of an Indian tribe and resides on the member's reservation in South Dakota is partially exempt from payment of the motor vehicle excise tax imposed by SDCL chapter 32–5B. Any individual who is an enrolled member of an Indian tribe and resides on trust land controlled by the member's tribe or in a dependent Indian community controlled by the member's tribe is partially exempt from payment of the motor vehicle excise tax imposed by SDCL chapter 32–5B. The amount of exemption from payment of the motor vehicle excise tax imposed by SDCL chapter 32–5B is tailored to the amount of actual off-reservation use, off-trust land use, or off-dependent Indian community use of the motor vehicle.

S.D.Admin.R. § 64:48:01:01. The defendants cite language from two Supreme Court decisions in which the Court held that a motor vehicle tax similar to the South Dakota excise tax was unlawfully applied to tribal members wherein the Supreme Court stated, "[h]ad [the State] tailored its tax to the amount of actual off-reservation use, or otherwise varied something more than mere nomenclature, this might be a different case. But it has not done so, and we decline to treat the case as if it had." *Colville,* 447 U.S. at 163–64, 100 S.Ct. 2069; *Sac and Fox,* 508 U.S. at 128, 113 S.Ct. 1985 (quoting *Colville,* 447 U.S. at 163–64, 100 S.Ct. 2069). The defendants contend that the excise tax as modified by the Department's rules complies with federal law because the excise tax is now "tailored to the amount of actual off-[Indian country] use" by tribal members. *Id.*

[¶ 29] On appeal in this action, the Eighth Circuit held that "the State lacks jurisdiction to impose the excise tax on tribal members residing on the reservation" because "the tax essentially operates as a tax on the ownership of a motor vehicle." *Cheyenne River,* 105 F.3d at 1558. The South Dakota legislature has not changed the excise tax and it remains the same personal property tax the Eighth Circuit found unlawful in *Cheyenne River. Id.* The Department adopted rules in an attempt to circumvent the Eighth Circuit's ruling in *Cheyenne River.* The Department's "tailored" rules did not change the character of the excise tax; rather, the Department simply created a new method of computing the *amount* of excise tax owed by tribal members. Federal law has not changed since the Eighth Circuit issued its decision in *Cheyenne River.* Congress has not authorized the State to impose a motor vehicle ownership tax on tribal members residing in Indian country. *See Cheyenne River,* 105 F.3d at 1556 (stating that "Congress has not specifically authorized the taxation of a tribal member's personal property, and South Dakota thus lacks jurisdiction to impose such a tax."). The Court finds that no change in the law or facts exist in this case which entitle defendants to relief under Rule 60(b)(5).

■ [¶ 30] The defendants argue that because South Dakota law allows a property tax to be prorated between exempt and non-exempt uses, the administrative rules lawfully prorate the excise tax between off-Indian country use and on-Indian country use of motor vehicles by tribal members. Defendants also assert that the Supreme Court has authorized such proration of taxes in *Colville, Sac & Fox,* and *Moe.* The Court finds defendants' argument unavailing on this issue. Tribal members residing in Indian country governed by their respective tribes are exempt from the excise tax pursuant to federal law, not state law. Therefore, whether state law allows a proration as to tax exemptions granted under state law is not relevant to the exemption at issue in this lawsuit. Moreover, the South Dakota Supreme Court has repeatedly held that a tax may be prorated only if express statutory authority exists for such a proration. *See Loyal Order of Moose Lodge #1337 v. Pennington County,* 566 N.W.2d 132, 134 (S.D.

1997) (holding that "[a]ll property is subject to taxation unless expressly exempted by statute"); *Appeal of Sioux Valley Hosp. Ass'n,* 513 N.W.2d 562, 564 (1994) (same); *South Dakota Educ. Ass'n v. Dromey,* 85 S.D. 630, 188 N.W.2d 833 (1971) (same). The proration of the excise tax as adopted by the Department in its rules is not expressly authorized by statute and, therefore, does not appear to be proper under South Dakota law. Ultimately, the fundamental flaw with the excise tax at issue herein, as ruled by the Eighth Circuit, is that Congress has not authorized taxation of a tribal member's personal property by the State of South Dakota. *Cheyenne River,* 105 F.3d at 1556.

[¶ 31] Based upon the above discussion, defendants are not entitled to relief under Rule 60(b)(6). The Eighth Circuit has explained that " '[Rule 60(b)(6) ] is properly invoked where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served.' " *Cornell v. Nix,* 119 F.3d 1329, 1332 (8th Cir. 1997) (quoting *Mohammed v. Sullivan,* 866 F.2d 258, 260 (8th Cir.1989)). The Court does not find the existence of any extraordinary circumstances that would justify relief from Judge Jones' February 21, 1995, decision in CIV 92–3035. Rather, it is clear that the defendants are required to refund the excise taxes as set forth in this opinion. Substantial justice will be served when the tribal members entitled to a refund of the unlawfully collected excise tax receive refunds and the State no longer attempts to impose the excise tax upon qualifying tribal members.

[¶ 32] In light of the above discussion, the Court need not reach the issue of whether the administrative rules are truly "tailored to the amount of actual off-[Indian country] use." *Colville,* 447 U.S. at 163–64, 100 S.Ct. 2069. The Court notes, however, that the rules appear to be based upon pure speculation by the Department as to the amount of miles tribal members would drive their motor vehicles outside of Indian country. It is rather amazing that the State would urge this Court to allow a state law enacted by the State Legislature to be, in effect, amended by an administrative rule.

[¶ 33] The Court will not grant relief from the judgment entered in CIV 92–3035 as requested by defendants. No change in the law or the facts exists which results in the injunction being inequitable or entitling defendants to relief from judgment pursuant to Rule 60(b)(5) or (6).

## C. Cheyenne River Sioux Tribe's Motion to Dismiss Defendants' Motion

[¶ 34] The Cheyenne River Sioux Tribe filed a motion to dismiss the defendants' motion for relief from judgment (Doc. 214). The Tribe's motion is essentially a response in opposition to the defendants' motion, rather than a separate motion. The Court has considered all arguments made by the Tribe in ruling on the defendants' motion for relief from judgment. In light of the denial of the defendants' motion for relief from judgment on the merits, the Court need not reach the Tribe's arguments concerning res judicata, collateral estoppel and law of the case. The Court will deny the Tribe's motion as moot in light of the denial of the defendants' motion for relief from judgment.

## ORDER

[¶ 35] Now, therefore,

[¶ 36] IT IS ORDERED:

1) The United States' motion for leave to file sur-reply brief in opposition to defendants' motion for relief from judgment, Doc. 218, is granted.

2) The United States' motion for partial summary judgment, Doc. 221, is granted to the extent that the defendants shall refund with interest all motor vehicle excise taxes paid pursuant to SDCL § 32–5B–1, from June 4, 1986, to the date this Order is filed, by members of the Cheyenne River Sioux Tribe who paid the excise tax while they resided in Indian country, as defined

**1180**

in 18 U.S.C. § 1151, which was governed by the Cheyenne River Sioux Tribe.

3) The United States' motion for partial summary judgment, Doc. 221, is granted to the extent that the defendants shall refund with interest all motor vehicle excise taxes paid pursuant to SDCL § 32–5B–1, from May 12, 1992, to the date this Order is filed, by members of the Rosebud Sioux Tribe who paid the excise tax while they resided in Indian country, as defined in 18 U.S.C. § 1151, which was governed by the Rosebud Sioux Tribe. The motion for partial summary judgment is denied in all other respects.

4) The defendants' motion for relief from judgment, Doc. 209, is denied.

5) The Cheyenne River Sioux Tribe's motion to dismiss South Dakota's motion for relief from judgment, Doc. 214, is denied.