#23630, #23649-aff in pt & rem-DG

**2006 SD 33**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

KIMBERLY KAY SPIEKER MILLER,
f/k/a, KIMBERLY KAY JACOBSEN,                    Plaintiff and Appellee,

  v.

TODD WAYNE JACOBSEN,                             Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

* * * *

HONORABLE ROBERT L. TIMM
Judge

* * * *

NANCY L. OVIATT of
Green, Roby, Oviatt,
  Cummings & Linngren
Watertown, South Dakota                          Attorneys for plaintiff
                                                 and appellee.


REBECCA L. MORLOCK REEVES of
Wiles and Rylance
Watertown, South Dakota                          Attorneys for defendant
                                                 and appellant.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 9, 2006

OPINION FILED **04/05/06**

#23630, #23649

GILBERTSON, Chief Justice

[¶1.]        Kimberly Kay Spieker Miller (Kimberly) filed a motion seeking modification of a child support obligation order and divorce decree from Todd Wayne Jacobsen (Todd).  The trial court found facts sufficient to warrant an increase in Todd's child support obligation but denied Kimberly's motion to modify the divorce decree.  We affirm on Issues 1, 2, 3, and 5 and remand Issue 4 to the trial court for a determination of when an upward deviation from the basic child support obligation for transportation needs ends.

## FACTS AND PROCEDURE

[¶2.]        Kimberly and Todd were married on May 13, 1989.  Their son, Andrew Kristian, was born on July 19, 1989.  Andrew has been disabled since birth due to cerebral palsy and a seizure disorder.  Kimberly and Todd divorced on May 10, 1993, at which time Kimberly was awarded full custody of Andrew under a stipulated agreement and subject to Todd's visitation rights.

[¶3.]        The stipulated agreement called for Todd to continue paying child support per the terms specified as long as Andrew "is dependent or until further order of the court."  It also required the parties to exchange income information annually and for Todd to provide proof of $200,000 in life insurance maintained for Andrew's benefit.  In addition, the agreement called for Kimberly to claim Andrew as a dependant for income tax purposes in odd numbered years and Todd to claim him in even numbered years.  Under the terms of the original stipulated agreement, Todd was required to pay $516 per month in basic child support per the support schedule in SDCL 25-7-6.2.  An additional $155 per month in child support

-1-

was included based on Andrew's special needs. The language of the agreement

provided:

> The parties further agree that in addition to the basic child support obligation which is set by the schedule found at SDCL 25-7-6.2, Todd will pay an additional $100 per month as support. Todd also agrees to pay an additional $55 per month in recognition of the special needs his son has for transportation. Said additional $55 per month payment shall continue to be made each month until the van in which Kim now transports Andrew is paid in full or October 28, 1997.

[¶4.] In 2001, Kimberly contacted Todd to inform him that due to changes in

circumstances and Andrew's enrollment in a specialized school in Sioux Falls,

South Dakota, with tuition paid by public funds, any dollar amount over $300 per

month received by Kimberly would have to be forwarded to the State. Therefore,

she proposed a reduction from the original $676 child support obligation to $300. In

June 2001, the parties signed a modification to the child support agreement thereby

incorporating the new amount.

[¶5.] Currently, Andrew is fifteen years old and weighs sixty-five pounds.

His disability requires him to have extensive care and assistance with activities of

daily living. Andrew must be fed, dressed and diapered daily, as well as requiring

assistance with medications, bathing, and toileting twice a day. He takes

medications three times per day for seizure control, drooling, and bowel

elimination. Andrew must be turned at least once each night when he is sleeping.

He also has a drug pump in his abdomen that delivers medication to his spinal

column for relief of muscle tightness. Andrew spends the majority of his day in his

wheelchair and requires physical assistance for transfers to and from his

wheelchair.

[¶6.] Kimberly and Andrew have lived in Watertown, South Dakota, since 1993. Kimberly works as an occupational therapy assistant, and is remarried. Todd has lived in Longmont, Colorado, since before the divorce and is now remarried. He sees Andrew approximately once a year for a visit. Todd has not seen Andrew since 2003 and has made no recent contact with Andrew's school or caregivers.

[¶7.] Andrew attends school at Children's Care Hospital in Sioux Falls during the school year and during summer session. He remains in Sioux Falls at the school from Monday morning to Friday afternoon each week school is in session. Kimberly drives him to Sioux Falls each Monday morning that school is in session and returns on Friday afternoons to take him back to Watertown for the weekend. Andrew is home in Watertown every weekend from Friday night until Monday morning, during school holidays, and during summer break. Thus, Andrew lives with Kimberly slightly more than fifty percent of the year.

[¶8.] Kimberly has been for the last fifteen years, and continues to be, Andrew's primary caregiver at home. She attends to his medical needs, coordinates and arranges for his care when she is at work, and attends all his medical appointments. She often uses her vacation time from work to attend to Andrew's needs and, on occasion, has had to take leave without pay due to Andrew's medical needs. Kimberly and her husband have made numerous adaptations to their home to provide better care for Andrew. They recently installed a lift system and bathtub in Andrew's room and have built a wheelchair ramp outside their home.

[¶9.] Kimberly's parents have provided care for Andrew when he is home on school breaks and Kimberly is at work. Her parents have provided the care without

charge. Due to their ages and her father's recent retirement, Kimberly anticipates having to hire caregivers in the near future to administer medication and meet Andrew's complex physical needs while he is home and she is at work. The cost of the care was estimated at $2,400 per year by Kimberly at the hearing.

[¶10.]     Andrew's disability requires Kimberly to use a van equipped with a lift and lock-down system to transport him from Watertown to Sioux Falls each week for school, to medical appointments, and to recreational outings. The van is used exclusively for Andrew's transportation, not for Kimberly or her family's use. Kimberly has purchased two vans since the divorce. She replaced the original van with a used van with high mileage in January 2004, but it has been expensive to operate and must be replaced. Based on Kimberly's knowledge of Andrew's limitations and needs for his future growth, including additional headroom, at the time of the hearing Kimberly planned to trade in the current vehicle and purchase a new van in the near future. The total cost was estimated at approximately $35,654, but after trade in of the current vehicle and lift system and rebates, the sum of $30,075 needed to be borrowed to pay for the new van. Kimberly's monthly payment was scheduled to be $507.66.

[¶11.]     On November 5, 2004, Kimberly initiated the current proceedings seeking a modification of Todd's child support obligation and a modification to the divorce decree to permit Kimberly to claim Andrew each year as a dependant for income tax purposes. Prior to filing her motion to modify the judgment of divorce, Kimberly requested Todd's compliance with the terms of the stipulated agreement with regard to proof of life insurance maintained for Andrew's benefit and proof of income. Todd failed to respond to the requests, and Kimberly filed a motion with

the court to compel production. Todd failed to produce the required information until the morning of the hearing.

[¶12.]     On December 15, 2004, a hearing on the matter was held. After testimony from both Kimberly and Todd, the trial court held that Todd's child support obligation per SDCL 25-7-6.2 was based on an annual income of $84,000, and a monthly net income of $4,159, which provides a monthly basic child support obligation of $690. The trial court found Andrew spent significant time outside Kimberly's home at school and, therefore, modified the child support obligation by deviating downward by fifty percent to $345 per month. The trial court found that Andrew required caregivers to attend to his complex physical needs and that due to Kimberly's parents' advancing age, paid caregivers would need to be hired at an annual cost of $2,400. Therefore, it ordered an additional upward deviation to Todd's basic child support obligation of $144 per month for caregivers to provide the necessary care for Andrew while he is in Kimberly's home and she is at work.

[¶13.]     The trial court also found that Andrew's special health care needs required the purchase of a new van and lift system, and ordered an upward deviation of $380 per month for the cost of the new van and lift system. Based on Kimberly's documentation, the loan for the new van was scheduled to be paid in full on February 1, 2011. The trial court ordered Todd to make the $380 monthly payment through the life of the loan until it was paid in full on February 1, 2011.

[¶14.]     Todd's total child support payment was set at $869 per month, which included $345 in basic child support plus the upward deviations of $144 for paid caregivers and $380 for the van payment. The trial court ordered that the $345 in basic child support and the $144 upward deviation for paid caregivers was effective

December 1, 2004, and was to be paid to the Office of Child Support Enforcement "[b]eginning March 1 and on the 1st day of each month thereafter[.]" The trial court did not specify a time for the expiration of this portion of Todd's child support obligation, but noted with regard to the monthly $380 van payment "there has to be a mechanism for closing that off, if it is a four year [loan] I think it ought to be for four years even though the child is going to be 18 and probably the child support obligation will end, but the moral obligation doesn't end."

[¶15.]    Finally, the trial court awarded Kimberly $750 of the $1,128 in attorney fees she incurred to bring the motion to modify the divorce decree. The trial court found a portion of Kimberly's attorney fees were incurred due to Todd's failure to timely comply with the requirement in the divorce decree to provide the income and insurance information after numerous requests.

[¶16.]    Todd appeals the following issues:

1. Whether the trial court erred when it calculated Todd's net monthly income.

2. Whether the trial court erred in calculating Todd's child support obligation when it included upward deviations for the purchase of a van and paid caregivers for Andrew.

3. Whether the trial court erred when it failed to provide Todd with a credit for overpayments in vehicle and medical payments previously made to Kimberly.

4. Whether the trial court erred when it failed to comply with SDCL 25-5-18.1 and specify the termination date of Todd's child support obligation.

5. Whether the trial court erred when it awarded Kimberly attorney fees.

[¶17.]    Both parties request attorney fees for the appeal currently before this Court per the provisions of SDCL 15-26A-87.3. Each party has submitted affidavits

with verified, itemized statements of legal services with their respective motions for attorney fees. Todd requests $3,928.68 in attorney fees, while Kimberly requests $3,727.

## STANDARD OF REVIEW

[¶18.] We review the trial court's award or denial of child support under the abuse of discretion standard. Midzak v. Midzak, 2005 SD 58, ¶17, 697 NW2d 733, 738 (citing Billion v. Billion, 1996 SD 101, ¶14, 553 NW2d 226, 230 (citing Vander Pol v. Vander Pol, 484 NW2d 522 (SD 1992))). A trial court's award of attorney fees is also reviewed under the abuse of discretion standard of review. *In re* South Dakota Microsoft Litig., 2005 SD 113, ¶27, 707 NW2d 85, 97-98 (citing Anderson v. Aesoph, 2005 SD 56, ¶18, 697 NW2d 25, 31) (citations omitted). As such, our purpose is not to determine "whether we would have made an original like ruling, but whether a judicial mind, in view of the law and circumstances of the particular case, could reasonably have reached such a conclusion." Johnson v. Johnson, 468 NW2d 648, 650 (SD 1991) (citing Nelson v. Nelson, 454 NW2d 533 (SD 1990)). The exercise of discretion by the "trial court must have a sound basis in the evidence presented." Linard v. Hershey, 489 NW2d 599, 603-04 (SD 1992) (citing Masek v. Masek, 89 SD 62, 228 NW2d 334 (1975)). An abuse of discretion occurs when "discretion [is] exercised to an end or purpose not justified by, and clearly against, reason and evidence." Watson-Wojewski v. Wojewski, 2000 SD 132, ¶14, 617 NW2d 666, 670 (quoting *Billion*, 1996 SD 101, ¶14, 553 NW2d at 230 (quoting Kanta v. Kanta, 479 NW2d 505, 507 (SD 1991))).

[¶19.]    We review the trial court's findings of fact under the clearly erroneous standard. *Johnson*, 468 NW2d at 650 (citing SDCL 15-6-52(a)). We will overturn the trial court's findings of fact on appeal only when a complete review of the evidence leaves the Court with a definite and firm conviction that a mistake has been made. *Id.* (citing Johnson v. Johnson, 451 NW2d 293, 395 (SD 1990)).

## ANALYSIS AND DECISION

[¶20.]    **1.    Whether the trial court erred when it calculated Todd's net monthly income.**

[¶21.]    A parent's net monthly income for child support purposes is determined under SDCL 25-7-6.3, which provides in relevant part:

> The monthly net income of each parent shall be determined by the parent's gross income less allowable deductions, as set forth herein. The monthly gross income of each parent includes amounts received from the following sources:
>
> (1)    Compensation paid to an employee for personal services, whether salary, wages, commissions, bonus, or otherwise designated[.]

[¶22.]    Todd failed to provide Kimberly with his income information as required by the stipulated agreement. He did provide a copy of his 2003 W-2 on the morning of the hearing, which indicated his wages for 2003. During Todd's direct examination, the following testimony was given:

> Q.    Todd, how are you employed?
> A.    I'm employed with Lockheed as a systems engineer.
> Q.    And is that – are you salaried or are you paid hourly?
> A.    I'm salary.
> Q.    What is your salary for this year?
> A.    I think it's approximately $84,000.

Todd's 2003 W-2 was then entered into evidence, which indicated his salary for 2003 was $75,785. During cross-examination, Todd was asked if his current salary

was $84,000. Todd responded: "I'd have to look at the W-2 but it's probably 83." Todd also stated his annual salary increases were only a percentage or two at the most.

[¶23.] On appeal, Todd contends the trial court erred when it found his annual gross income to be $84,000 and his monthly gross income to be $7,000. He argues the amount should have been determined using his 2003 W-2, resulting in an annual gross income figure of $76,000 and a monthly gross income figure of $6,333.33. Without citing any authority, Todd contends the trial court erred when it failed to base Todd's net monthly income on actual earned income received by Todd as evidenced by his 2003 W-2.

[¶24.] The trial court based its finding of fact as to Todd's annual income on Todd's testimony. The trial court was not required to base its finding of fact solely on wages as evidenced by the 2003 W-2 when competent evidence existed in the record to support a determination of 2004 wages. Todd testified his 2004 salary was either $84,000 or $83,000 and that his monthly salary might differ by one to two percent due to shift differentials. Therefore, there was sufficient evidence in the record for the trial court to find Todd's current salary was $84,000.

[¶25.] Todd next argues that the trial court erred when it failed to consider the higher cost of living in Colorado. Todd cites to *Johnson*, 468 NW2d at 651, for the proposition that the trial court should have considered the higher cost of living in Colorado as compared to South Dakota. Todd entered no evidence into the record at the hearing to support his claim. Rather, in the Defendant's proposed findings of fact and conclusions of law, which were ultimately refused by the trial court,

finding of fact number thirteen stated:  "There is a cost-of-living difference between Watertown, South Dakota[,] and Longmont, Colorado.  One Hundred Thousand Dollars ($100,000) in Watertown, South Dakota[,] has been compared to One Hundred Eighteen Thousand Dollars ($118,000) in Longmont, Colorado."

[¶26.]     In *Johnson*, this Court stated:

> As to father's contentions concerning the higher costs of living in California, we note that these are mere conclusory assertions without evidentiary support in the record.  However, while recognizing that father's assertions may have merit, we note that father fails to mention that not only was an increase in costs of living occasioned by his move to California but so too was a $7,000 to $8,000 per year increase in his wages for similar work.  Thus, while father might suffer the detriment of higher costs of living in California, he also gains the benefit of a higher wage scale to offset those costs.

468 NW2d at 651.

[¶27.]     The same reasoning applies in the instant case.  There is no competent evidence in the record to support Todd's bare and conclusory assertion as to the cost of living in South Dakota versus Colorado.  Nor is there any mention of the salary differential Todd was able to obtain by securing employment in Colorado rather than in South Dakota.  The trial court did not err when it did not consider the cost-of-living differential between South Dakota and Colorado.

[¶28.]     **2.     Whether the trial court erred in calculating Todd's child support obligation when it included upward deviations for the purchase of a van and paid caregivers for Andrew.**

[¶29.]     SDCL 25-7-6.10 provides in relevant part:  "Deviation from the schedule in § 25-7-6.2 shall be considered if raised by either party and made only upon the entry of specific findings based upon the following factors:  … (3) Any

necessary education or health care special needs of the child[.]" Child care expenses may also be considered as a factor for additional support above the basic amount in the schedule in SDCL 25-7-6.2, as they are not included within the basic child support obligation. Juttelstad v. Juttelstad, 1998 SD 121, ¶17, 587 NW2d 447, 451.

*Van Purchase*[1]

[¶30.] Todd argues the trial court abused its discretion when it ordered an upward deviation of his child support obligation for the purchase of a van for Andrew. Todd contends the trial court *sua sponte* provided Kimberly with the deviation for the purchase of a new van. He attempts to characterize her testimony at the child support hearing as merely an expression of her concerns over the van. Todd then argues that Kimberly's need for a vehicle is no different than any other parent's need for a vehicle for family transportation, analogizing the need for a larger van to accommodate Andrew's growth to that of "any other mother's need to have a van so as to accommodate more of a child's friends." Todd then argues the trial court abused its discretion when it failed to consider that Kimberly's decision to purchase a Chevrolet van, instead of a Volkswagen van, rendered obsolete the lift and lock-down system previously purchased by Todd's family. Finally, Todd argues

---

1.    Kimberly argues on appeal that Todd waived this issue, as his proposed findings of fact and conclusions of law included an upward deviation for a van payment but at a lower dollar amount. Despite what appears at first glance as a waiver of this issue, Todd objected to the inclusion of any upward deviation for a van payment when he opposed its inclusion in Kimberly's proposed findings of fact and conclusion of law. Therefore, we address the issue of the upward deviation for the van.

that a vehicle is not a necessary or special need within the meaning of SDCL 25-7-6.10, and therefore, an upward deviation from the basic child support obligation may not be imposed for the purchase of the van.

[¶31.] Kimberly instituted the proceedings for two purposes, first, to modify the child support obligation and second, to change the divorce decree to allow her to claim Andrew as a dependant in each tax year. At the hearing, Kimberly testified to the need for a new van for Andrew's transportation due to the age of the current van, the travel to and from Andrew's school in Sioux Falls, and Andrew's physical growth. Todd's claim that the trial court *sua sponte* provided Kimberly with the upward deviation for the van is without merit.

[¶32.] Todd's arguments that a vehicle is not a special need within the meaning of SDCL 25-7-6.10 and that the need is one for transportation for Kimberly are equally without merit. Kimberly testified at the hearing that the need for additional headroom for Andrew as he continues to grow was the basis of the decision to purchase a Chevrolet van rather than another Volkswagen van that could accommodate the current lift and lock-down system. In addition, Kimberly testified that the Easter Seals Society had already approved a $500 contribution toward the cost of the $1,000 ramp and lock-down system for the new van. Furthermore, Todd offered no testimony at the hearing as to how the purchase of a Volkswagen van would better accommodate Andrew's physical needs. The trial court entered specific findings of fact regarding Andrew's disability and physical limitations and how his need for reliable transportation to school and for medical

visits made the purchase of the new van a special need within the meaning of SDCL 25-7-6.10.

*Paid Caregivers*

[¶33.]     The circuit court's order included an upward deviation from the basic child obligation for paid caregivers for Andrew while he is in Kimberly's home and she is at work.  The circuit court found the annual cost of paid caregivers to be $2,400 and ordered Todd to pay $144 per month for the upward deviation.

[¶34.]     Todd argues that Kimberly would be unjustly enriched by the upward deviation ordered by the trial court for the paid caregivers.  Todd contends that Kimberly testified only that she may incur such expenses, that she offered no evidence as to the cost and number of hours of care required, and that he should not be required to pay these expenses until such time that they are incurred.

[¶35.]     Todd again mischaracterizes the record.  Kimberly testified at length as to how the age of her parents and her father's impending retirement would preclude them from caring for Andrew on a regular basis as they have for the past fifteen years.  Kimberly's mother is sixty-five years old and is no longer physically able to lift Andrew by herself and transfer him to and from his wheelchair.  Kimberly's father is seventy years old and semi-retired.  In addition, Kimberly testified that the hourly rate she would need to pay suitable caregivers would range from eight to ten dollars per hour and that she would be seeking a nursing student with some medical training and skills due to Andrew's complicated medication regimen.  She also testified the care would be required during the six-week summer break and over the Christmas and holiday breaks when Kimberly was scheduled to

work. Kimberly testified the annual cost of the care provider would be $2,400 given the rate and the number of hours of care needed.

[¶36.] Todd did not offer any evidence at the hearing to support his contention on appeal that Kimberly would be unjustly enriched by his payment for caregivers until such time as the expenses are actually incurred. Nor does Todd offer any authority for his proposition that he should not have to pay the expenses until they are actually incurred. Todd cites to *Juttelstad*, 1998 SD 121, ¶20, 587 NW2d at 451-52, for the proposition that Kimberly would be unjustly enriched as she would receive more in support payments than the expense actually incurred. However, in that case the Court's holding concerned a mother who admitted she knowingly accepted more in child care reimbursements than the actual expenses she incurred. *Id.* ¶21. The holding in *Juttelstad* does not apply to the instant case, as Kimberly has yet to receive any payments for caregivers from Todd and there are no facts to indicate she will receive more money from Todd than the expense she will incur for the services.

[¶37.] The obligation to provide specialized caregivers for Andrew belongs to Kimberly and Todd, not to Kimberly's parents as suggested by Todd. *See* SDCL 25-7-6.18.[2] There is evidence in the record to support the need for such care and the amount of the expense that will be incurred. The trial court entered specific

---

2. SDCL 25-7-6.18 provides in relevant part: "The court may enter an order allocating the reasonable child care expenses for the child, which are due to employment of either parent, job search of either parent, or the training or education of either parent necessary to obtain a job or enhance earning potential."

findings of fact as to the need for paid caregivers. The trial court then allocated seventy-two percent of the expense to Todd and twenty-nine percent of the expense to Kimberly based on their gross income figures.

[¶38.]     The trial court did not abuse its discretion when it included an upward deviation in the child support obligation for the purchase of a van and for paid caregivers. There is ample evidence in the record to support the deviations, and deviations for both are permitted under the statutory scheme.

[¶39.]     **3.    Whether the trial court erred when it failed to provide Todd with a credit for alleged overpayments in vehicle and medical payments previously made to Kimberly.**

[¶40.]     Todd claims the trial court erred when it failed to order a credit or reimbursement for his alleged overpayments of van payments for the original van and child medical expense payments. Todd claims Kimberly had been unjustly enriched by his overpayments.

[¶41.]     It is well settled in South Dakota that a modification cannot be made to past-due child support payments, except for those payments that accrue during the time of a pending modification petition. *Juttelstad*, 1998 SD 121, ¶17, 587 NW2d at 451. The underlying rationale for the rule is that a past-due payment or child support installment becomes a final judgment by law and cannot be retroactively modified. *Id.* (citing SDCL 25-7-7.4; Agee v. Agee, 1996 SD 85, ¶20, 551 NW2d 804, 806). However, the prohibition on retroactive modifications does not apply when a parent is current on all support obligations and that parent is

seeking a correction for overpayment of child care expenses.[3]  *Id.*  We have not had

the opportunity to consider the applicability of the holding in *Juttelstad to* upward

deviations to the basic child support obligation codified in SDCL 25-7-6.10.[4]

*Van Overpayments*

[¶42.]        Todd argues he overpaid Kimberly $55 per month for the purchase of a

vehicle to transport Andrew.  The original child support agreement required Todd

---

3.      In *Juttelstad,* the child care expenses were labeled an upward deviation. 1998 SD 121, ¶17, 587 NW2d at 451.  However, child care expenses are more properly characterized as an additional child support amount, as child care is not codified as an upward deviation under SDCL 25-7-6.10, but rather is codified separately at SDCL 25-7-6.18.

4.      SDCL 25-7-6.10 provides:

Deviation from the schedule in § 25-7-6.2 shall be considered if raised by either party and made only upon the entry of specific findings based upon any of the following factors:
(1)     The income of a subsequent spouse or contribution of a third party to the income or expenses of that parent but only if the application of the schedule works a financial hardship on either parent;
(2)     Any financial condition of either parent which would make application of the schedule inequitable. If the total amount of the child support obligation, including any adjustments for health insurance and child care costs, exceeds fifty percent of the obligor's monthly net income, it shall be presumed that the amount of the obligation imposes a financial hardship on the obligor. This presumption may be rebutted based upon other factors set forth in this section;
(3)     Any necessary education or health care special needs of the child;
(4)     The effect of agreements between the parents regarding extra forms of support for the direct benefit of the child;
(5)     The obligation of either parent to provide for subsequent natural children or stepchildren. However, an existing support order may not be modified solely for this reason; or
(6)     The voluntary act of either parent which reduces that parent's income.

to make the payment until October 28, 1997, or until the vehicle was paid in full. Todd continued making the payment from October 1997 until June 2001 and contends he overpaid Kimberly by $2,420. Kimberly did not bring Todd's error to his attention during that time.

[¶43.]     In the instant case, Kimberly testified at the hearing that she continued to accept the $55 per month after the first van was paid off and used the money toward the purchase of the second van required for Andrew's transportation and other transportation expenses such as repairs and maintenance for the van. Todd did not testify at the hearing to the issue of the $55 overpayment. Todd testified at the hearing in support for his contention that he should not have to provide additional funds toward the purchase of a new vehicle and that Kimberly was already reimbursed for repairs, maintenance, and wear and tear on the vehicle by the state, as she received mileage reimbursement for the weekly trips from Watertown to Sioux Falls. Todd included the credit or reimbursement for the alleged $2,420 overpayment in his proposed findings of fact and conclusions of law that were ultimately rejected by the trial court. Todd contends Kimberly was unjustly enriched by the $55 payment as she no longer had any vehicle expenses from October 1997 to June 2001.

[¶44.]     The upward deviation of $55 for the van payment was not a part of the original child support obligation as determined by using the schedule in SDCL 25-7-6.2. Rather, it is more akin to additional child support for child care expenses as was the case in *Juttelstad*. Thus, the rule against retroactive modifications does not apply to the alleged $2,420 overpayment as Todd is current on all his child

support obligations, both the basic amount per SDCL 25-7-6.2 and all upward deviations, and is seeking a correction or credit for overpayment of an upward deviation under a theory of unjust enrichment.

[¶45.]    However, in order to recover, Todd must show that Kimberly was unjustly enriched by the overpayments. *See Juttelstad*, 1998 SD 121, ¶19, 587 NW2d at 451. "Unjust enrichment occurs 'when a party confers a benefit upon another party who accepts or acquiesces in that benefit and it is inequitable to receive that benefit without paying.'"  *Id.*  (quoting Sporleder v. Van Liere, 1997 SD 110, ¶16, 569 NW2d 8, 12 (quoting Randall Stanley Architects, Inc. v. All Saints Community Corp., 1996 SD 138, ¶20, 555 NW2d 802, 805)).

[¶46.]    For Todd to establish that Kimberly was unjustly enriched at his expense, he must show Kimberly received a benefit to which she was not entitled. He then must show that Kimberly was cognizant of the benefit and that her retention of the benefit without reimbursing Todd unjustly enriched her.

[¶47.]    Kimberly did not concede she received a benefit as a result of the $2,440 overpayment, as she used the monies for expenses incurred for Andrew's transportation above and beyond the expense of purchasing the original van. Kimberly testified she and her husband paid $6,000 for the second van purchased for Andrew in 2004, as well as repairs and maintenance work on the original and second van.  Todd offered no evidence of unjust enrichment at the hearing and offered only bare allegations in his proposed findings of fact and conclusions of law.

[¶48.]    The trial court rejected Todd's proposed findings of fact and conclusions of law wherein he addressed the issue of the overpayment.  No specific

finding of fact was entered by the trial court on this issue. However, the facts in the record indicate that Kimberly was not unjustly enriched by the retention of the $55 per month from October 1997 to June 2001, as she incurred substantial and legitimate expenses for Andrew's transportation above and beyond the mileage reimbursement and the alleged $2,440 overpayment. The trial court did not abuse its discretion in refusing to order Kimberly to reimburse or credit Todd for the alleged overpayment.

*Medical Overpayments*

[¶49.] Todd contends he overpaid Kimberly $100 per month in medical care expenses from January 1996 to June 2001, for a total of $9,020. Todd argues the overpayment occurred when Andrew transitioned from Todd's insurance to Medicaid in 1995. Todd argues at that time all of Andrew's medical expenses began being covered by Medicaid, thus eliminating the need for the $100 per month upward deviation under the terms of the original stipulated agreement.

[¶50.] Todd mischaracterizes the nature of the additional $100 above the basic child support amount in the original stipulated agreement. The language of the agreement provided Todd would pay an additional $100 as support due to Andrew's special needs. The language did not limit the additional $100 to medical expenses not covered by insurance. That subject was specifically addressed in another portion of the stipulated agreement wherein Todd agreed to pay for seventy-six percent of any uncovered medical expenses and Kimberly agreed to pay for twenty-four percent of such expenses. More importantly, the additional $100 did not have an expiration date attached to it as did the upward deviation for the

van payment. Therefore, Kimberly did not receive monies from Todd to which she was not entitled under the terms of the stipulated agreement. Based on the evidence in the record, the trial court did not err when it failed to order Kimberly to reimburse or credit Todd with $9,020 in alleged overpayments.

[¶51.] **4. Whether the trial court erred when it failed to comply with SDCL 25-5-18.1 and specify the termination date of Todd's child support obligation.**

[¶52.] SDCL 25-5-18.1 provides in relevant part:

> The parents of any child are under a legal duty to support their child in accordance with the provisions of § 25-7-6.1, until the child attains the age of eighteen, or until the child attains the age of nineteen if the child is a full-time student in secondary school.

In *Birchfield v. Birchfield*, 417 NW2d 891, 895 (SD 1988), this Court made it unequivocally clear that a parent's statutory duty to support his or her child terminates per the provisions of SDCL 25-5-18.1, no later than age nineteen. A trial court may not impose a duty to support a child beyond the age of eighteen, or the age of nineteen if the child is still enrolled full-time in high school. Radigan v. Radigan, 465 NW2d 483, 485 (SD 1991) (citing SDCL 25-5-18.1; *Birchfield*, 417 NW2d at 895). However, the parties are free to agree to provide support beyond the age of nineteen. *Birchfield*, 417 NW2d at 895 (citing Warne v. Warne, 360 NW2d 510 (SD 1984)).

[¶53.] Ordinarily, we do not address a question on appeal that was not before the trial court. State v. Hays, 1999 SD 89, ¶16, 598 NW2d 200, 203 (citing State v. Henjum, 1996 SD 7, ¶13, 542 NW2d 760, 763). "The trial court must be given an opportunity to correct any claimed error before we will review it on appeal." *Id.*

(quoting *Henjum*, 1996 SD 7, ¶13, 542 NW2d at 763 (quoting State v. Heftel, 513 NW2d 397, 401 (SD 1994))).

[¶54.]     In the instant case, the trial court did not impose an absolute duty upon Todd to support Andrew beyond the age specified in SDCL 25-5-18.1.  The trial court's order is silent as to an ending date for the basic child support and upward deviation for paid caregivers.  Therefore, the issue of whether the trial court could impose an obligation for basic child support and the upward deviation for paid caregivers is not properly before the Court.  Thus, we do not address this portion of the issue as raised by Todd.

[¶55.]     The issue of whether the trial court could impose an obligation for child support beyond the age of eighteen as specified in SDCL 25-5-18.1 has been properly preserved as it pertains to the van payment.  Todd objected to the inclusion of the upward deviation for the van payment in its entirety when he objected to Kimberly's inclusion of the upward deviation in her proposed findings of fact and conclusions of law.  Therefore, we address only this portion of the issue.

[¶56.]     The trial court ordered Todd to pay the $380 monthly child support payment for the purchase of the van until the van was paid in full.  The estimated payoff date for Kimberly's loan is February 1, 2011.  Given that Andrew was born on July 19, 1989, he will be eighteen years old on July 19, 2007.  In effect, the trial court ordered Todd to pay this portion of the child support payment up until Andrew is twenty-two years of age.

[¶57.]     Kimberly argues the language of the stipulated agreement entered into by the parties in 1993 controls this issue.  It provides in relevant part:  "that

Defendant's obligation for payment of child support shall continue as long as Andrew Kristian Jacobsen is dependent or until further Order of the Court." Kimberly argues that the meaning of the word "dependent" is in reference to Andrew's physical and mental disability, which will require continued care throughout his adult years, rather than his attainment of the age of majority.

[¶58.]	We remand this issue to the trial court in order to fully develop the record and allow each party to present evidence and argument as to the termination date of the child support obligation.  If the trial court holds that Todd's child support obligation terminates per SDCL 25-5-18.1 upon Andrew's eighteenth birthday, we direct the trial court to reconsider the monthly support amount.  If the trial court determines the meaning of the term "dependent" in the child support agreement entered into by the parties called for support for Andrew for life, the vehicle payment termination date may stand as originally ordered.

[¶59.]	**5**.	**Whether the trial court erred when it awarded Kimberly attorney fees.**

> In determining whether one party should be required to pay another party's attorney fees, we will consider the property owned by each party; their relative incomes; whether the requesting party's property is in fixed or liquid assets; and whether either party unreasonably increased the time spent on the case.

*Johnson*, 468 NW2d at 652 (quoting Studt v. Studt, 443 NW2d 639, 644 (SD 1989) (quoting Senger v. Senger, 308 NW2d 395, 398 (SD 1981))).

[¶60.]	Applying the factors above, and considering the facts of the case before us, we do not find that the trial court erred when it found that a portion of Kimberly's attorney fees were the result of Todd's unwillingness to comply with the

requirement to produce proof of insurance and income after multiple requests. Providing Kimberly with the required information on the morning of the hearing did not eliminate the attorney hours and fees she incurred to prepare the various requests and file the motion to compel.

*Appellate Attorney Fees*

[¶61.]     Kimberly and Todd both filed separate motions for appellate attorney fees accompanied by itemized statements of expenses.  In view of the above, we award Kimberly the full amount of appellate attorney fees she requested, $3,727.

[¶62.]     We affirm on Issues 1, 2, 3, and 5 and remand Issue 4 to the trial court for a determination of the meaning of the word "dependent" in the original stipulated agreement and its effect on the termination of the upward deviation from the basic child support obligation for the van payment.

[¶63.]     KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

[¶64.]     SABERS, Justice, concurs in part and dissents in part.


SABERS, Justice (concurring in part and dissenting in part).

[¶65.]     I concur except as to Issue 4, where I dissent.  Kimberly argues that the meaning of the word "dependent" is in reference to Andrew's physical and mental disability, which will require continued care throughout his adult years.  I agree and it is a mistake to give Todd "a second bite of the apple."

[¶66.]     Unfortunately, Andrew's physical and mental disability is permanent and he will always be "dependent" for life, family, medical and financial support. In this context, the stipulated agreement requiring Todd's obligation for payment of

child support, which shall continue "as long as Andrew[] is dependent or until further Order of the Court," is clear.  We should remand Issue 4 to be enforced, not to be interpreted.